Regina **FITZGERALD**, Plaintiff-Appellee,

v.

**SIRLOIN STOCKADE, INC.,**
Defendant-Appellant.

No. 78–1593.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 30, 1979.

Decided March 5, 1980.

Rehearing Denied Aug. 21, 1980.

■■■■■■■■■■■■■■■

Terry W. Tippens, Oklahoma City, Okl. (Margaret McMorrow-Love, Oklahoma City, Okl., with him on brief), of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiff-appellee.

Jim Ikard, Oklahoma City, Okl. (Robert Jernigan, Oklahoma City, Okl., with him on brief), for defendant-appellant.

Issie L. Jenkins, Acting Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, and Phillip B. Sklover, Atty., Equal Employment Opportunity Commission, Washington, D. C., filed an amicus curiae brief.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Sirloin Stockade, Inc. seeks reversal of a final judgment of the United States District Court for the Western District of Oklahoma. The case is one which arises under Title VII of the Civil Rights Act of 1964, as amended. Damages in the amount of $63,822.92 were assessed based on the district court's determination that appellant had discriminated against the plaintiff consistently and continuously throughout her employment at Sirloin Stockade because of her sex. The discrimination took the form of denial of equal pay, denial of opportunities for advancement, and clear acts of retaliation as a result of her filing a claim in the state office concerned with equal employment opportunity.

Sirloin Stockade is a relatively new organization which was shown to have grown and expanded very rapidly during the rele-

vant period and thus offered many opportunities for advancement. It was formed in the mid-sixties and by 1973 it had 120 outlets. A number of these were added in the years 1974–1977.

Plaintiff-appellee started work with appellant in 1972, soon after receiving a degree in liberal arts with a psychology major from Oklahoma University. She sought to obtain an assignment in the Training Department. At the time she was advised that there was no opening but that one would probably develop soon. She elected to work temporarily in one of appellant's steak houses to gain general experience in appellant's operations. She continued this for five months. While so engaged, she contacted the Training Director from time to time about openings. In February of 1973, she was transferred to the Printing Department and she was given the task of preparing an operations manual. Upon completion of this, she was moved to the Training Department where she was assigned work under the then director and his assistant. Her duties consisted of answering the phone, doing clerical work and assisting in general department functions. Later, she began performing light testing and interviewing. During this period the director left and the assistant director succeeded him and appellee's duties increased. Notwithstanding this fact, she was not appointed as assistant director nor did she receive the pay of an assistant director. Plaintiff worked in the department for nine months. The department was then abolished and she was transferred to the Advertising Department.

In the Advertising Department, plaintiff worked under the director, Mr. Milt Powell. After about a month he left this position and gave up all his duties with the exception of some of the art work. He continued to do this work on an hourly basis. The plaintiff performed Powell's other duties. In October 1974, the Advertising Department was terminated, and an outside agency took over the advertising work. Plaintiff did not obtain either the position title or the pay of the director during her stay in the department.

Next, the plaintiff was transferred to the Purchasing Department and worked under Ms. Marge Meacham doing the purchasing of items and equipment for new restaurant outlets. She also assisted Ms. Meacham in company publications and in store contests. The plaintiff suggested to Ms. Meacham the creation of a new position in the Purchasing Department involving quality control. Ms. Meacham said that she would take the idea up with one of the officers. Later, the plaintiff was told that she could devote one day per week to this work. Soon after that, however, Roy Rogers, who had been zone manager, was transferred to the Purchasing Department and took on many of these duties. The man who had been the Director of Training was promoted to the position which had been vacated when Rogers was transferred. Plaintiff applied for the vacated position of Director of Training. She was told that she could not be considered for the position. Plaintiff filed a complaint with the Oklahoma Human Rights Commission the next day, February 26, 1976.

Things drastically changed after the filing of the complaint. Plaintiff's responsibilities were taken from her and were assigned to others. Ms. Meacham began calling closed door conferences with her. These were conducted in order to discuss and criticize the plaintiff's work performance and attitude. Derogatory memos were placed in her file by Meacham and Rogers. Finally, she was discharged on June 25, 1976. The reason assigned was failure to perform duties to which she was no longer assigned. After that, plaintiff obtained the essential "Right to Sue" letter from the EEOC. Her next step was to commence the present action.

## FINDINGS AND CONCLUSIONS

The cause was tried to Judge Eubanks, who made detailed and thorough findings of fact and conclusions of law. In general, the judge concluded that, beyond a shadow of doubt, the defendant had discriminated against the plaintiff throughout her em-

ployment based on her sex; that it had consistently denied her the same pay that would have been given to men for the same work; and that she had been denied the opportunity for promotion within the company.

The substance of the court's findings is as follows:

1. That the plaintiff had performed a substantial part of the duties of Advertising Manager for seven months, and although she was not qualified for title of Advertising Director, she was not given a salary which reflected the responsibilities that she had. The court determined that she was entitled to compensation for the actual work that she had performed. The court found that the difference between what she was receiving and what she was entitled to was $200.00 per month.

2. That she was not considered for a promotion in the Purchasing Department when an opening occurred because of her sex; that she was better qualified than was Roy Rogers, who filled the position. On account of this denial because of her sex, the court said that she was entitled to the same pay Rogers received.

3. That she was denied consideration for the position of training director because of her sex, even though she was not as well qualified or better qualified than the male competitor who obtained the position; that she was discriminated against because of her sex when the company refused to consider her.

4. That the defendant wrongfully retaliated against the plaintiff following her discrimination charge with the Oklahoma Human Rights Commission; and that the company discharged her on this account.

5. That plaintiff is entitled to back pay in order to compensate her for the discrimination; that she is entitled to front pay compensation in lieu of reinstatement until June 30, 1981, a period of five years from the date of her wrongful termination. The amount of front pay was calculated to equal the difference between the compensation she was expected to receive in her new job

and the salary of Roy Rogers on the date of the judgment. The court said that this remedy was necessary because reinstatement would not be appropriate because the environment at Sirloin Stockade was shown to be too hostile to permit this. In addition, plaintiff is also entitled to lost profit sharing benefits in the amount of $6,708.92, car allowance in the amount of $6,900.00, and reasonable attorney's fees and costs.

From a reading of the findings and statements made at the trial, it is apparent that Judge Eubanks was unquestionably convinced that there had been gross discrimination against the plaintiff because of her sex. The judge found that she was bright, educated and competent, and that she had begun her work with the company at a time when it was growing at a rapid rate, which produced considerable advancement opportunities. Notwithstanding all of these facts, she was kept in the stereotypical role of a clerical position even when she was performing more responsible work. The court found that this company's decisions on promotion were made on a subjective basis and had a discriminatory impact on females, and that the plaintiff's failure to advance was the result of the discriminatory policies and practices. It was further found that the general discrimination against the plaintiff during the entire period of her employment was supported by very specific instances evidencing a conscious intent on the part of the defendant to discriminate against plaintiff on the basis of her sex.

The following are the contentions asserted by the company:

1. That the court erred in finding that the plaintiff was part of a training program.

2. That there was error in connection with the motion for directed verdict as to the advertising director position.

3. That the court's reference to the Equal Pay Act in its findings introduced a new issue into the trial, and that the company was entitled to a jury trial if relief was to be given under the Equal Pay Act.

4. That the court erred in finding discrimination in relationship to the compensation paid for the Advertising Department position.

5. That the court erred in determining that the company had discriminated against the plaintiff in refusing to consider her for and promote her to the position in the Purchasing Department.

6. That the court erred in finding that there had been discrimination on the basis of sex when the company refused to consider plaintiff's application for the position of training director.

7. The trial court applied an incorrect standard in its determination that the plaintiff was entitled to back pay in connection with the Purchasing Department position.

8. The trial court erred in its conclusion that the plaintiff was entitled to front pay on the basis of the difference between the salary received by Roy Rogers and that expected to be received by plaintiff from June 1976 to June 1981, which sum was $20,478.00.

9. The trial court erred in ordering front pay rather than reinstatement based on the finding that the company engaged in retaliatory activities and psychological warfare against the plaintiff after she filed a discrimination charge with the Oklahoma Human Rights Commission.

A consideration of the above-stated issues necessarily involves a review of whether the evidence supports the factual findings of the trial court. With very few exceptions, the findings appear correct.

I.

EFFECT, IF ANY, OF THE TRIAL COURT'S STATEMENT THAT THE PLAINTIFF WAS PART OF A TRAINING PROGRAM

The finding complained about here reads as follows:

Now, this case is one that in my opinion is easy for the Court to say that there was conscious intentional sex discrimination exercised against this woman by the Defendant almost from the very day she started work. She started to work just like any body else that she was going to be trained for a management position. And, Mr. Gant said they wouldn't normally take anybody in this training program that wasn't considered to be a management caliber of people and thought to be at least permanent or semi-permanent. And she went through the same training program that these other men did that rapidly advanced. But she didn't she was kept in this lowly clerk-typist job, which is an insult because she had a good education.

The company carried out a formal training program for persons interested in operational management of restaurants. The court may have gained the impression that the plaintiff was in a training program because of the fact that she was employed for seven months in one of the restaurant outlets. She did this in order to get some general training in the field, but was not part of the formal training program of the defendant. The appellant contends that the judge's impression resulted in prejudice which extended to all of the court's findings because it revealed that he pictured the plaintiff as one who had been hired and trained looking toward promotion which never came.

The comments of the court regarding this issue were not part of the formal findings of fact but were part of a statement made from the bench. The contention of the plaintiff is that the court corrected this misconception when he announced his formal findings.

It is to be emphasized that no single act of discrimination was relied on by the court in finding liability. Instead, there existed a succession of such acts. According to the court, the discrimination appeared in each task that was assigned to the plaintiff. The company refused to allow her, according to the judge, to advance beyond a clerical level. The plaintiff also suggested that the trial court had the impression that she had pursued an informal training program in that she had in each different depart-

ment or division sought to learn as much as she could and undertook as much responsibility as possible, and the judge's findings are not out of harmony with this theory.

■ We fail to see clear prejudice as a result of this situation, but, nevertheless, we will remand the case to the trial court to enable it to consider whether it misunderstood the plaintiff's involvement in the training program, and, if so, whether the appellant was prejudiced in any way.

## II.

### EFFECT OF THE DIRECTED VERDICT THAT THE COURT INITIALLY GAVE AS TO THE ADVERTISING DIRECTOR POSITION

■ Plaintiff had alleged that she actually performed the duties of Advertising Director without having the title or compensation. The defendant moved for directed verdict at the close of her evidence, saying that the plaintiff's failure to file her discrimination charge within 180 days of the last date of discrimination created a jurisdictional defect. The trial court upheld the defendant's motion, saying that she was not qualified for the position of Advertising Director.

After the judge had so ruled, the defendant called Milt Powell, who had been the director of the department at the time when the plaintiff had been working there, as a witness for a very limited purpose. He did not go into all issues relevant to the plaintiff's claim for additional compensation for work she performed in the department. The judge later clarified his ruling and said that he had meant to rule only that the plaintiff lacked qualifications for the title of Director of the Advertising Department. He said that she was discriminated against because of her sex throughout her employment and she would have made more money in the Advertising Department had she been a man, even though she was not qualified to be head of the department.

The company argues that it relied on the misleading statement of the trial judge which it interpreted as disposing of the title

and compensation claims of the plaintiff as to the Advertising position. The company claims that it was misled into foregoing the opportunity to more fully examine Milt Powell. We disagree.

This is one of the sorrows of trying a case. Nothing can be taken for granted. One must take full advantage of present opportunities when a witness takes the stand. If a subject has been overlooked, a request can be made to the court to recall the witness.

We conclude that the appellant's rights were not affected in any substantial way, whereby the plaintiff's award would be affected.

## III.

### THE ASSERTED RIGHT OF APPELLANT TO HAVE THE EQUAL PAY ACT CLAIM TRIED BEFORE A JURY

No Equal Pay Act, 29 U.S.C. § 206(d), issue was raised by the pleadings or at the pretrial conference. The issue only arose when Judge Eubanks made his conclusion of law which stated that the defendant violated the Equal Pay Act in connection with the compensation paid to plaintiff while she was in the Advertising Department. Title VII does not give the right to a jury trial. We may assume for purposes of this appeal that in a trial pursuant to 29 U.S.C. § 206(d), a jury trial would be in order. *See Altman v. Stevens Fashions Fabrics*, 441 F.Supp. 1318, 16 E.P.D. ¶ 8255 (N.D.Cal.1977); *Grayson v. Wickes Corp.*, 450 F.Supp. 1112, 17 E.P.D. ¶ 8370 (N.D.Ill. 1978); *Carter v. Marshall*, 16 E.P.D. ¶ 8246 (D.C.Cir.1978). Appellant again maintains that it was misled and failed to assert the right to a jury until the trial was over.

The plaintiff's position is that the reference to the Equal Pay Act was merely a mislabeling by the judge and that the thrust of her claim was violation of Title VII for which she further argues there was plenty of supportive evidence.

■ Title VII is more broad and extensive than the Equal Pay Act. At most they are coterminous in the area of discrimination based on sex, and so it is difficult to see how the appellant could benefit. At most it would be able to get a favorable verdict from a jury on the Equal Pay Act while, at the same time, the court was granting relief under Title VII. So, we view this as a legalism which lacks substantive value. The trial court did not even suggest abandonment of Title VII in its findings, and so we must reject the present contention that the mention of the Equal Pay Act introduced an issue that required calling for a halt of the trial and the empaneling of a jury. Nor should this procedure be pursued now. No value could flow from remanding this question to the judge.

## IV.

## DOES THE EVIDENCE SUPPORT THE TRIAL COURT'S FINDING OF DISCRIMINATION IN CONNECTION WITH DENIAL OF COMPENSATION TO PLAINTIFF FOR HER SERVICES IN THE ADVERTISING POSITION?

■ Appellant's position here is that plaintiff did not perform the same work as

had been carried on by Powell, her predecessor. Plaintiff partially concedes this argument, but claims that the record supports a finding of discrimination under Title VII. We agree, and we are not disposed to resurrect the Equal Pay Act argument to apply to this substantive question. It is true that Title VII permits certain affirmative defenses also available under the Equal Pay Act on the part of an employer in discrimination in pay cases. The purpose of the Title VII Amendment found at 42 U.S.C. § 2000e–2(h), the so-called Bennett Amendment, is to bring Title VII into accord with the Equal Pay Act. Thus, the exceptions provided in the Equal Pay Act, such as pay differentials due to a seniority or merit system, or other valid factors not based on sex, are also exceptions under Title VII. This does *not* mean that where the judge makes a mistaken reference to the Equal Pay Act in his findings that its standards must be followed throughout, and we have no intention of succumbing to the suggestion.[1]

■ We are, of course, aware of the cases upon which appellant relies, but we must also conclude that in this fact situation they are not applicable.[2]

1. We do not condemn appellant for trying, but that does not say that it is entitled to succeed.

2. Cases cited by the defendant which support the conclusion that Title VII claims concerning discrimination with regard to compensation must be viewed as controlled by the standards of the Equal Pay Act include *In re National Airlines, Inc.*, 434 F.Supp. 249 (S.D.Fla.1977), *Howard v. Ward County, North Dakota*, 418 F.Supp. 494 (D.N.D.1976), and *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).

*In re National Airlines, Inc., supra*, involved a controversy over the defendant's maternity leave policy. Although not relevant to the issues in the case, the court stated at 257: "Where the issue of compensation is contested in a Title VII claim, the provisions of the Equal Pay Act, 29 U.S.C. § 206(d), are controlling."

In *Howard v. Ward County, supra*, a female deputy sheriff was seeking back pay under Title VII for the failure of the county to pay her a salary commensurate with that of male deputies. The court stated that "[i]n order to determine whether Plaintiff has been discriminated against because of her sex in violation of Title

VII with respect to her compensation, then, I must apply the Equal Pay standards." 418 F.Supp. at 503.

In *Gilbert, supra,* the Court addressed the legality under Title VII of an employer's disability plan which denied benefits for disabilities arising from pregnancy. Interpretative regulations under the Equal Pay Act addressed the subject. The Court stated that because of the Bennett Amendment, interpretations of 29 U.S.C. § 206(d) of the Equal Pay Act are applicable to Title VII.

Each of these cases is factually distinguishable from the case at bar and they do not consider the specific issue of whether discrimination with regard to compensation which is outside the purview of the Equal Pay Act could violate Title VII. This is not a case in which a discriminatory activity is specifically sanctioned under the Equal Pay Act exceptions and liability is, nonetheless, sought under Title VII. Here a finding of discrimination under Title VII does not conflict with the provisions of the Equal Pay Act. It was found that the plaintiff was discriminated against solely because of her

Finally, we are of the opinion that Title VII was the applicable provision under which this case was tried and under which relief was granted. Indeed, the trial court in its findings made it clear that it was ruling on the basis of discrimination under Title VII and was not predicating its findings on the Equal Pay Act. To accept the defendant's thesis would be highly unjust to the plaintiff. She tried her case on the basis that the company's actions violated Title VII. Therefore, we find no basis for introducing this stray issue at this stage.

## V.

### WAS THE TRIAL COURT'S FINDING THAT THE APPELLANT DISCRIMINATED AGAINST PLAINTIFF IN REGARD TO THE PURCHASING POSITION ERRONEOUS?

Appellant argues that the court erred in holding that plaintiff had established a prima facie case of discrimination pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in regard to the purchasing position—that there was a failure to establish that a vacancy existed, and a failure to establish, in addition, that the plaintiff was qualified.

There was evidence given by the vice president of appellant that Roy Rogers was transferred to the purchasing position because he was having problems handling his previous position of zone manager. It is argued that there was no real opening because Roy Rogers was laterally transferred to the position as an accommodation to him and not in response to a vacancy. There is testimony that Roy Rogers was not able to adjust readily to the duties in the Purchasing Department and that it required some time for him to become acquainted with the requirements of the position. Also, there is evidence that he continued to perform various tasks which were not purchasing in nature such as disposing of surplus equipment and handling problems at various of the retail outlets. In spite of this, there is

ample evidence that the plaintiff was better qualified to perform the purchasing duties than Rogers.

We have recognized previously that where discrimination is charged in promotions, consideration of long-term performance must be given. Formalistic job classifications are not to be used to facilitate discrimination. *See Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975). The trial court noted that there were promotional opportunities in the Purchasing Department for which the plaintiff's qualifications were particularly relevant, and the court also found that the person who was granted the job was less qualified than plaintiff. There is evidence revealing various occasions on which the defendant utilized plaintiff's abilities in performance of responsible duties without promoting her. This supports the conclusion that appellant's policy was to withhold promotion from the plaintiff. In the face of many opportunities to recognize her ability, the appellant consistently refused to do so.

Appellant complains that the statistics considered by the court in finding a prima facie case of discrimination were not competent. They show the percentage of females receiving executive compensation at Sirloin Stockade in relationship to the total percentage of females in the Oklahoma City work force employed as managers, administrators and professional technical persons. They were offered to show a pattern and practice of nonadvancement of women at Sirloin Stockade. This evidence is sketchy and is not overwhelmingly persuasive, but it does not appear that the court based its findings solely on it. Rather, as we have noted, the court relied upon specific acts of discrimination in reaching its conclusion. The conclusion that there was discrimination was actually corroborated by the testimony of Mr. Grant, the vice president, which revealed the extremely low number of women who held management positions

sex in a manner which is not within the scope of the Equal Pay Act. This finding does not

offend the Bennett Amendment and Equal Pay Act standards should not be controlling.

in the corporation. The judge undoubtedly considered this and properly so. Some of the statistics lacked high probative value. This does not mean that they were inadmissible.

■ Finally, the defendant says that even assuming a vacancy in the Purchasing Department existed, that the plaintiff was not qualified to do all of the work that Roy Rogers performed. He was shown to have performed many odd job functions. This does not eliminate the fact that the plaintiff did show ability in areas in which there were opportunities for advancement in this department. The withholding of opportunities for promotion in this department followed the same pattern that was employed in other departments. It cannot be denied that the failure to promote plaintiff was because of her sex.

## VI.

### DID THE COURT ERR IN FINDING THAT THE PLAINTIFF WAS DISCRIMINATED AGAINST IN REGARD TO THE TRAINING DIRECTOR POSITION?

The finding to which the appellant here takes exception is that which stated that the plaintiff was discriminated against on the basis of her sex when the appellant failed to consider her for the position of Training Director and did not even allow her to present an application. The trial court held that this constituted violation of Title VII. The court relied on *Gillin v. Federal Paper Board Co.*, 479 F.2d 97 (2d Cir. 1974). In the cited case it was held that the refusal to consider a woman for a job, not merely because of her lack of qualifications but because of her sex, was illegal. There it was found that the plaintiff did not possess all of the qualifications for the position in question. The court recognized, however, that she was within the group entitled to be considered because she possessed some familiarity and experience with most aspects of the job. The court's reasoning was that if discrimination on the basis of sex played at least a part in the employer's failure to give consideration to the plaintiff, Title VII was violated.

■ The Training Director position required three years' experience in store management and supervision. Plaintiff here did not have that actual experience. Appellant's position is that that fact alone was the reason for not considering her for the job. The trial court rejected this argument, however, and said that the refusal to accept an application and to at least consider the plaintiff was partially because of her sex. The applicable finding is not erroneous. Indeed, it is consistent with the court's extensive findings and the evidence of discrimination which pervaded the record as a whole. Plaintiff's effort to obtain consideration for the Training Director position was met with resistance similar to that she encountered in seeking to obtain the advertising position.

## VII.

### DID THE COURT CORRECTLY AWARD DAMAGES IN THE FORM OF BACK PAY FOR THE DISCRIMINATION FOUND TO EXIST IN CONNECTION WITH THE PURCHASING POSITION?

■ The trial court determined that plaintiff was entitled to back pay measured by the difference in salary received by Roy Rogers when he began working in the Purchasing Department and the pay received by plaintiff at that time. The determination was based on the finding that nondiscriminatory consideration would have entitled plaintiff to a promotion in place of the transfer of Rogers. The court's theory was that back pay should be awarded to make persons whole for past injuries suffered as a result of unlawful discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Appellant recognizes that in the proper case back pay is appropriate as a measure of damage. It contends, however, that in this case the award goes much further than placing the plaintiff in a position that she would have reached in the absence of discrimination.

Roy Rogers was receiving $1,638.00 per month plus a variety of fringe benefits when he was transferred to the Purchasing Department. Appellant says that the purchasing position was not generally entitled to this amount of pay. The defendant emphasizes that Rogers had many years of seniority with the company and was laterally transferred from zone manager, which is the highest paid level in the company besides that of company officers, and claims that he was transferred without reduction of salary because of a general company policy.

As a result of the appellant having discriminated against the plaintiff in connection with the Advertising Department position, she was found entitled to receive $900.00 per month as of January 1, 1976. It is argued that the raise to $1,638.00 per month was drastic and inequitable and that the top amount that any person other than a former zone manager would get would be between $1,000.00 and $1,200.00 per month.

▮▮▮▮ Plaintiff points to the *Albemarle Paper Co. v. Moody,* case as support for the argument that an award for the difference between the actual salary and that received by the person who was awarded the position constitutes the correct measure when a discriminated against employee is being made whole. She argues that that amount is necessary to place her in the rightful place she would have been had there been no discrimination. She reminds us that the trial court here found that plaintiff had been discriminated against from the very beginning of her employment. It is also argued that the appellant's contention that the true value of the Purchasing Department position was $1,000.00 to $1,200.00 was speculative and lacks backing outside of the opinions expressed by Sirloin Stockade officers. Here, the trial

court disregarded the evidence that part of Roy Rogers' salary was based on his seniority. If appellant wished to present evidence that would be more probative as to the genuine value of this position, it should have utilized its opportunity to do so. We are reluctant to interfere with the trial court's design of a remedy. It cannot be said that the amount awarded fails to carry out the objectives of the Act.

## VIII.

## THE CHALLENGE TO THE AWARD BY THE TRIAL COURT OF FRONT PAY

The ruling questioned here is based on the trial court's finding that the defendant had engaged in retaliatory activities and psychological warfare following the filing by the plaintiff of the discrimination charge with the Oklahoma Human Rights Commission. The court also found that she had been wrongfully terminated in June 1976, because of the complaint that had been filed with the Commission. As a result of all this, the trial court considered and rejected a possible reinstatement order on the ground that the environment was hostile. Instead, an alternative remedy was designed. The court awarded front pay based on the difference between Roy Rogers' salary of $1,802.00 per month at the time of judgment, and that which the plaintiff expected to make in her present job until she reached a place where she could recover equivalent pay and could exercise equivalent responsibility. The trial court's view was that she would continue to suffer monetary damage as a result of the past discrimination until June 25, 1981, five years from the date of wrongful termination. As a result of this determination, the sum of $20,478.00 was awarded in front pay.[3] De-

---

**3.** The trial judge's analysis in support of this finding is found in paragraph 16 of his Findings and Conclusions:

> 16. That with regard to front pay liability the plaintiff Fitzgerald should be making at the date of this judgment at least $1,802 per month and from this date forward the plaintiff's expected earnings until she reaches her

> rightful place are $1,000 per month for the remainder of 1978, $1,200 per month for the year 1979, $1,400 per month for the year 1980, and $1,600 per month for the year 1981. Therefore, from the date of judgment until June 25, 1981, the plaintiff should recover $20,478 as additional lost wages until she reaches her rightful place. This Court

fendant, however, says that no front pay award was justified.

The plaintiff had not requested reinstatement. Instead, she began work with another company at a salary of $1,000.00 per month. She expressed no desire to give up this job and return to work with the appellant. The appellant claims that since she did not pray for reinstatement, that front pay was inappropriate. It is also argued that there was no valid basis for rejecting reinstatement as a remedy.

■■■■ All of the appellant's arguments here lose sight of the fact that the trial court has a broad discretion in fashioning relief to achieve the broad purpose of eliminating the efforts of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination. *See Franks v. Bowman Transportation Company*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albemarle Paper Co. v. Moody, supra.* Furthermore, Title VII does not limit the range of remedies. *See* 42 U.S.C. § 2000e–5(g). The statute allows for an award of any equitable relief the court deems appropriate. The trial court has the authority to award appropriate relief dictated by the evidence, even though it may not have been sought in the pleadings. *See* Fed.R.Civ.P. 54(c).

## IX.

DID THE TRIAL COURT LACK THE POWER OR AUTHORITY TO DETERMINE THAT REINSTATEMENT WOULD BE INAPPROPRIATE AND TO ORDER A FRONT PAY AWARD?

We conclude that it did not.

■■ The court's finding that reinstatement was inappropriate was supported. We see no necessity for the plaintiff to request reinstatement as a prerequisite to obtaining front pay where the evidence reveals an atmosphere of hostility. In view of the retaliatory action of the defendant, it seems improbable that there could be a warm relationship. Defendant cites the following cases which hold that the antagonism or hostility must have been of such magnitude so that it would be impossible to have a reconciliation. *See E. E. O. C. v. Kallir, Phillips, Ross, Inc.*, 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd without opinion*, 559 F.2d 1203 (2d Cir. 1977), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *Hyland v. Kenner Products Co.*, 11 E.P.D. ¶ 10,926 (S.D.Oh.1976). Here, the hostility evidenced was of a high degree of magnitude.

The contention is made that reinstatement is to be abandoned only where special attributes of the job exist which involve the image of the company as represented to the public by the plaintiff, where the parties are so antagonistic or hostile that a working relationship would be impossible, and where denial would not frustrate the central purposes of Title VIII. Even under those standards, we believe that the remedy was appropriate. The court, after.all, found that the defendant had engaged in psychological warfare against the plaintiff. This was supported in the evidence which showed that her loyalty was questioned, her responsibilities were reduced, and memoranda concerning her attitude were inserted in her personnel file. Retaliation would have been the order of the day if plaintiff had been reinstated.

■■■ Nor do we believe that the scope and extent of the front pay was unreasonable or speculative. The trial court gave credit to the plaintiff's testimony. The appellant finally argues that the award should have been granted in installments. This was a possible alternative, but we fail to see it as a mandatory method of assessment of damages in this case. The method used was a matter within the trial court's discretion. *See James v. Stockham Valves & Fittings Co.*, 559 F.2d 310 (5th Cir. 1977).

does not discount said sum to its present value because the wage differential figure used for purposes of computation is Roy Rogers' present monthly salary figure of $1,802 and it is anticipated by this Court that that figure will increase over the next three years, therefore equalizing the need for discounting to present value.

In sum, the trial court's finding as to the existence of discrimination is well supported by the evidence which was received and considered. The trial court did not proceed on statistical patterns alone, although some statistics were relied on. Rather, there were a succession of individual acts on the part of the defendant which the trial court found were explainable only in terms of sex discrimination. There is not one single act, there are a number of similar transactions which bespeak a discriminatory plan, and, indeed, this was the conclusion of the trial judge.

We conclude that the evidence was amply sufficient to support the judgment and our decision. We, therefore, affirm with the single exception noted above—that having to do with the court's statement about a training program. We order a remand and reconsideration of this issue.