Betty Lynn MARTIN, Plaintiff,

v.

FRONTIER FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

No. CIV–80–344–W.

United States District Court,
W. D. Oklahoma.

April 6, 1981.

Burck Bailey and Margaret McMorrow-Love, Fellers, Snider, Blakenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiff.

Mona S. Lambird, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc., Oklahoma City, Okl., and John E. Northcutt, Northcutt, Northcutt, Raley, Clark, Gardner, Hron & Northcutt, Ponca City, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEE R. WEST, District Judge.

### Introduction

This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Equal Pay Act of 1963, 29 U.S.C. § 206 et seq. The plaintiff alleges that the defendant employer violated the above acts by discriminating against her upon the basis of her sex. More specifically, she alleges that the defendant failed to promote her, failed to consider her for promotion, and discriminated against her in compensation, all on the basis of her sex. The defendant has denied the truth of the plaintiff's allegations.

The case was tried to the Court without a jury between the dates of March 18, 1981, and March 23, 1981. The testimony having been completed on the part of the plaintiff and the defendant and the case submitted to the Court for determination, the Court now makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Betty Lynn Martin, is a white female citizen of the United States and the State of Oklahoma and resides in Ponca City, Oklahoma.

2. Defendant, Frontier Federal Savings and Loan Association, is a saving and loan association organized and doing business under the laws of the State of Oklahoma, with its principal place of business in Ponca City, Oklahoma. At all times pertinent hereto, it employed more than 15 employees.

3. For several years, the defendant has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

4. Defendant's corporate offices are located in Ponca City, Oklahoma, where it also maintains a large branch office. It has branches in 10 other cities in Oklahoma.

5. Plaintiff was employed by the defendant in Ponca City for the period beginning October 20, 1975, and ending March 30, 1979, when she voluntarily resigned from employment.

6. Plaintiff began her employment with the defendant as an internal auditing assistant working under the direct supervision of Ray Woods, Internal Auditor. Although the minimum salary scheduled for the plaintiff's position was $550.00, she was given a starting salary of $520.00. The reduction in starting salary was based on the plaintiff's lack of accounting education as required in the job description.

7. At the time the plaintiff began work with the defendant, she possessed a high

school diploma and had worked as an accounts payable clerk with a corporation for approximately two years. She held no other employment experience or relevant educational qualifications.

8. While serving as internal auditing assistant, the plaintiff performed a variety of functions related to auditing, including the balancing of the defendant's checking accounts with commercial banks, doing cash audits of tellers, and performing worksheet functions in the auditing of other areas of the bank. The plaintiff had no responsibility for designing the audits but did assist Woods in executing the audits he had designed.

9. The plaintiff held the position of Internal Auditing Assistant for approximately two years. During her term in the Auditing Department, the plaintiff took six (6) hours of accounting courses at Northern Oklahoma College in Tonkawa, Oklahoma, and also participated in various seminars offered through the defendant Association's educational program.

10. On May 15, 1976, the plaintiff's monthly pay was increased to $550.00; her pay was increased again to $600. per month on July 15, 1977.

11. In December 1977, a new position was created in the Auditing Department and given the job title of Assistant Internal Auditor. The written qualifications for the job included a college degree with a major in accounting and experience in accounting and auditing. To fill the new position, Woods sought someone who could perform complete audits with a minimum of supervision. John M. Bryant was hired for the new position in March 1978 at a salary of $1,100. per month. He had completed three years of college and approximately 23 of the 30 hours normally required for an accounting major. Bryant also had 4 years of employment experience as the manager of the accounting department with a mortgage lending firm. Bryant's salary with the mortgage firm was approximately $1,400.00 per month.

12. During the period prior to the formal authorization of the new position of Assistant Internal Auditor, the plaintiff was made aware that a new position was being created. She inquired with Woods on the question of whether she would be qualified and considered for the job. Woods informed the plaintiff that she did not meet the requirements for consideration. The plaintiff did not pursue the possibility of applying for the position beyond that point.

13. In approximately November 1977, subsequent to her discussion with Woods about the new auditing position but prior to the hiring of Bryant, the plaintiff requested and received a transfer to the Corporate Savings Department of the defendant Association. She was given the position of Assistant Savings Administrator and retained her salary of $600.00 per month.

14. In obtaining her transfer to the corporate savings department, the plaintiff first learned of the opening through informal sources, then obtained an interview with the savings department supervisor, received approval from her current supervisor, and lastly, processed the transfer through her personnel office.

15. While serving as Assistant Savings Administrator, the plaintiff's responsibilities were, in general, savings administration, including monthly performance reports, direct deposit of social security checks, cash call processing, assisting tellers with problems, maintaining Jumbo savings accounts ledgers, and balancing general ledgers. The plaintiff was supervised by Kenna Lay, the Supervisor of Savings Administration. While serving in the position, the plaintiff's salary was increased to $625.00 per month on January 1, 1978, and to $669.00 per month on July 1, 1978.

16. Malcolm Preston was also an employee in the corporate savings department at the time that the plaintiff began working there. Preston began working for the defendant Association in October 1976. He was hired as an Assistant Savings Administrator and was given a beginning salary of $900.00 per month.

17. Preston possessed a high school diploma and had completed more than one

year of community college work. He also testified that he had completed numerous extension course offerings while serving in the military. Preston's work experience consisted of a 20-year term of service with the Air Force. He had achieved the rank of Technical Sergeant at the time of his separation and had worked primarily in Personnel Administration. Preston's testimony was that he had taken some business courses in his college studies and had some military pay courses while in service. That was the extent of his educational qualifications which related to accounting or banking.

18. As Assistant Savings Administrator, Preston's responsibilities differed substantially from others who held that job title. He was trained in basic duties such as tellers' functions and the operation of savings accounts, but was then assigned work in the area of new business development. Unlike other Assistant Savings Administrators, Preston had no regular or routine duty assignments and he reported directly to Bob Askew, the vice-president and manager of the Savings Department, rather than to the Savings Administration Supervisor.

19. Preston's responsibilities in new business development required that he solicit deposits and develop new programs to attract deposits rather than merely administer existing programs as did the other Assistant Savings Administrators.

20. Prior to June 1977, the responsibilities for administering retirement plans (IRA and KEOUGH accounts) was assigned to Don Palmer. In June 1977, Palmer departed from the corporate savings department and Preston was assigned his duties as Retirement Plans Administrator. Preston also continued to function in the area of new business development. The retirement plans responsibilities required as much as 70% of Preston's time during portions of the year but only as much as 50% for the larger part of the year. In May 1977, prior to becoming Retirement Plans Administrator, Preston's salary had been increased to $985.00 per month. He received no increase in salary upon his assumption of the addi-

tional duties but did receive an increase to $1064.00 per month in May 1978.

21. In June 1978, Preston received a transfer to the Tulsa Branch office and a change in job position to Loan Officer. Prior to his transfer, Preston was directed to train the plaintiff to assume the functions of Retirement Plan Administrator, and she began to perform those duties upon his departure. The plaintiff continued to perform most of her previous duties as Assistant Savings Administrator for approximately two more months until Mickey Finley was hired to join the defendant Association as an Assistant Savings Administrator. At the time Finley began employment, the plaintiff was relieved of a portion of her savings administration duties but continued to maintain Jumbo accounts ledgers and perform some other assignments. Retirement plan administration did constitute the larger part of her duties.

22. When the plaintiff assumed the retirement plan administration duties, she initially did not receive a change in title, the office facilities previously given with the job, or any increase in pay. During the next month, July 1978, the plaintiff received her annual job evaluation and an accompanying increase in salary from $625.00 per month to $669.00. The plaintiff then wrote a letter to Askew requesting that her job be reevaluated in light of the added responsibilities she had recently taken on. The job was reevaluated by the Job Evaluation Committee and the salary was increased to $700.00 per month. The plaintiff received her last raise during February 1979 to $728.00 per month. During the time that she served as Retirement Plans Administrator, the plaintiff was continuously dissatisfied with her pay because she was aware that Malcolm Preston had received a substantially larger salary while serving in that position. This dissatisfaction contributed to her eventual resignation and her charge of sex discrimination.

23. Another source of the plaintiff's dissatisfaction concerned the creation of a new position in the corporate savings department entitled "Administrative Assistant

Savings Operations/Services". The plaintiff identified this position as "NOW Account Administrator" because of an apparent understanding that the new position would involve the administration of NOW Accounts which were generally expected to be a new service that the Association would be able to offer in the near future. While it is unclear whether the plaintiff did ever discuss applying for the new position with Askew, the personnel office, or anyone else, the job was eventually structured to include more than NOW Accounts administration as the plaintiff expected. The job was structured to include all areas of new business development, including NOW Accounts, electronic funds transfer, plastic cards, and bill-paying services. The job included the new business responsibilities that had been performed by Preston until his departure and then assumed by Askew himself. In 1980, and more than a year after the plaintiff's resignation, the defendant created a position titled "NOW Accounts Supervisor" but this is not the position involved in this claim.

24. The qualifications required for the savings operations position included experience in a commercial bank or similar institution for 3–5 years, a college degree, and an ability to analyze complex operations and formalize recommendations. Ray Shaffer was hired to fill the position effective January 16, 1979, at a salary of $1,625.00 each month. He had a college degree, three summers of graduate training in banking at the SMU graduate banking program, and 13 years of commercial banking experience.

25. The plaintiff has also alleged that she was denied the opportunity to take educational courses offered by the defendant Association. The plaintiff was able to identify only one course that she was denied the opportunity to participate in and that course was not offered from the beginning of the plaintiff's term of employment until the spring of 1978. The plaintiff was unable to prove that she applied to take the course or was denied the opportunity at that time.

26. The plaintiff has also alleged that she applied for the position of loan officer at several times during the course of her employment. The method of intra-Association transfers practiced by the defendant makes it difficult for the Court to determine whether the plaintiff may have ever applied for the job of loan officer. Oral applications for transfer seem to have been the normal means of initiating a transfer rather than a formal written request. Also, the defendant did not post notices of job openings within the Association; informal, "word-of-mouth" communications were the routine method by which employees became aware that there were job openings in other departments. Although she may have had general conversations with others concerning the qualifications required for the job, the Court is unable to find that the plaintiff made an application of any sort for the position of loan officer.

27. The evidence at trial adequately described the duties of a loan officer but failed to firmly identify qualifications for the job other than the need to have taken a real estate lending course. Nevertheless, it is doubtful that the plaintiff possessed the educational background or employment experience to immediately qualify for a loan officer position.

### Conclusions of Law

1. The jurisdiction of the Court over the parties and subject matter of this action is authorized pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Equal Pay Act of 1963, 29 U.S.C. § 217.

2. The plaintiff's claim under the Equal Pay Act is founded upon the allegation that she performed the same work as a male employee but did not receive equal pay. More specifically, the plaintiff has sought to prove that she performed work that was substantially similar to that performed by Malcolm Preston while he served as Assistant Savings Administrator and Retirement Plans Administrator but received substantially less pay.

Under the equal work/equal pay doctrine, the plaintiff's initial burden is to prove that she performed work that was substantially similar to that performed by Malcolm Preston. *Gunther v. Washington County,* 602 F.2d 882, 887 (9th Cir. 1979); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 448 (D.C.Cir.), *cert. den.,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1976). The plaintiff need not show that the jobs at issue were exactly the same, but even similar jobs will not be deemed to be equal if a more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of the person receiving greater pay, and (3) are of an economic value commensurate with the pay differential. *Brennan v. South Davis Comm. Hosp.,* 538 F.2d 859, 861–62 (10th Cir. 1976); *Pedreyra v. Cornell Prescription Pharmacies,* 465 F.Supp. 936, 945 (D.Colo.1979).

The plaintiff in this case has failed to prove that the jobs involved were substantially equal. Although both parties held the title of "Assistant Savings Administrator", their respective duties were grossly dissimilar. Briefly stated, the plaintiff administered on-going programs of the savings department whereas Malcolm Preston was involved in the innovation and creation of new programs and the solicitation of new deposits. The plaintiff's duties as "Retirement Plans Administrator" came closer to matching those of Malcolm Preston while he held that position but the additional tasks that they performed were as dissimilar as their duties as "Assistant Savings Administrator". Further, the retirement plans responsibilities constituted a significantly larger portion of the plaintiff's duties while they were a lesser portion of Malcolm Preston's duties. Because of these readily apparent differences between the duties of the plaintiff and her male counterpart, the plaintiff has failed to carry her burden of showing substantial equality and must fail on her Equal Pay Act claim. The plaintiff's Title VII claim based on discrimination in compensation must also fail to the extent that it was based on an allegation of unequal pay for equal work. *Lemons v. Denver,* 620 F.2d 228 (10th Cir.), *cert. den.,* —— U.S. ——, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980).

3. The plaintiff has urged the Court to consider the theory of "comparable worth" as an alternative basis for plaintiff's recovery for alleged discrimination in compensation. The doctrine of comparable worth would have the courts order relief in those instances where two dissimilar jobs were proven to have the same equivalent worth to an employer but were allowed differing compensation because one of the jobs tended to be filled by one class, such as women, while the other job tended to be filled by another class, such as men.

This theory of recovery has apparently been rejected by the Tenth Circuit Court of Appeals as a cognizable basis for relief under either Title VII or the Equal Pay Act. *Lemons v. Denver, supra.* The plaintiff contends, however, that any such ruling by the Circuit Court in *Lemons v. Denver* was subsequently altered by its decision in *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945 (10th Cir. 1980). The *Fitzgerald* opinion is somewhat vague, but certainly is not an endorsement of comparable worth.

The opinion in *Fitzgerald* seems to recognize the principle adopted by at least a few courts that the Title VII protection in the area of discrimination in compensation is broader than that found in the Equal Pay Act and the doctrine of equal work/equal pay. *See IUE v. Westinghouse Elec.,* 631 F.2d 1094 (3rd Cir. 1980) (with dissenting opinion); *Gunther v. Washington, supra.* Nevertheless, the *Fitzgerald* case cannot be read to imply that comparable worth is a viable theory in this circuit. The opinion reads in part:

"In the Advertising Department, plaintiff worked under the director, Mr. Milt Powell. After about a month he left this position and gave up his duties with the exception of some art work. He continued to do this work on an hourly basis. The plaintiff performed Powell's other duties. In October 1974 [approximately seven months after Powell's departure],

the Advertising Department was terminated and an outside agency took over the advertising work. Plaintiff did not obtain either the position title or the pay of director during her stay in the department." *Id.*, 624 F.2d at 949.

Upon these facts, the trial court proceeded to find:

"That the plaintiff had performed a substantial part of the duties of Advertising Manager for seven months, and although she was not qualified for the title of Advertising Director, she was not given a salary which reflected the responsibilities that she had. The [trial] court determined that she was entitled to compensation for the actual work that she performed." *Id.*, 624 F.2d at 950.

In affirming the above award of relief, the Circuit Court interpreted the finding of the trial court to be "... that the plaintiff was discriminated against solely because of her sex in a manner which is not within the scope of the Equal Pay Act." *Id.*, 624 F.2d at 953–54, n.2. While this Court would not dispute that Title VII offers broader remedial measures for discrimination in compensation than does the Equal Pay Act, the Circuit Court's opinion remains somewhat curious in that the trial court's findings do come within the perimeters of equal work/equal pay theory. The trial court found that the plaintiff in *Fitzgerald* had performed a substantial part of her male predecessor's duties but merely was not so completely qualified as to warrant receipt of the complete job or job title. This sort of situation appears to fall clearly within the doctrine of equal work/equal pay whether applied to Title VII or the Equal Pay Act. No interpretation of the doctrine requires exact similarity of duties or possession of the same job title; instead, the doctrine hinges on performance of "substantially equal" work.

Despite the lack of complete clarity, it is certain that *Fitzgerald* did not recognize comparable worth as a theory of recovery. Furthermore, the facts in the instant case sufficiently differ from those in *Fitzgerald* so as to distinguish the two cases. Specifi-

cally, the duties of the plaintiff's predecessor in this case were divided and only about half of those duties were given to the plaintiff. The remaining new business development functions were taken on by Bob Askew himself. This case also differs factually because the plaintiff was given an evaluation and received an increase in pay based upon her additional duties. There is no basis for this Court to find that the evaluation of duties was unreasonably or improperly decided.

In sum, this Court not only holds that the compensation claim is properly evaluated under the equal work/equal pay standards but also finds this case is factually distinguishable from *Fitzgerald* in a manner which prevents recovery under any Title VII theory of recovery implicit therein. Because of the Court's holding in this regard, it need not consider the defendant's affirmative defenses which might justify the difference in salary between the plaintiff and Malcolm Preston.

 4. The plaintiff has made other claims of discrimination on the grounds that the defendant either failed to promote her or failed to consider her for promotion because of her sex.

a. The first position for which the plaintiff has alleged that she was denied promotion or consideration for promotion was that of Assistant Internal Auditor. In order to establish a prima facie case, the plaintiff must show that she was qualified for promotion. *Higgins v. Oklahoma Employment Security Commission*, 642 F.2d 1199, 1201 (10th Cir. 1981); *EEOC v. Fruehauf Corp.*, 609 F.2d 434, 435 (10th Cir. 1974), *cert. den.*, 446 U.S. 965, 100 S.Ct. 2941, 64 L.Ed.2d 814 (1980). The plaintiff in this case has failed to establish that she was qualified for the job of assistant auditor, either by measure of the job description or by comparison with persons considered or hired for the job.

b. The second position for which the plaintiff has alleged discrimination in promotion decisions is NOW Accounts Administrator or Administrative Assist-

ant for Savings Operations/Services. The plaintiff has also failed to establish that she was qualified for this position. The evidence undeniably established that the plaintiff was not qualified.

c. The third position for which the plaintiff has alleged discriminatory failure to promote or to consider for promotion is that of Loan Officer. The plaintiff has failed to establish that she ever applied for this position or otherwise brought herself into a posture that should have induced her consideration for this position.

In sum, the plaintiff has failed to establish a prima facie case as to any of these claims of discrimination in promotion.

■ 5. The plaintiff has also charged that the defendant denied her the opportunity to take educational courses offered to male employees. She has failed to establish, however, that she ever requested any course when it was being offered and was denied the opportunity to participate therein.

6. It should be noted that this Court's jurisdiction over some of the plaintiff's claims were dependent upon a finding of a continuing violation because of the plaintiff's failure to file a claim with the EEOC within the proper period of time as required in 42 U.S.C. § 2000e–5. No continuing violation was found, and to the extent that any of the plaintiff's claims would depend upon a finding of a continuing violation, they would also necessarily fail for jurisdictional reasons.

### Conclusion

In accordance with the foregoing findings of fact and conclusions of law, it is determined that the plaintiff should take nothing by reason of this action and that judgment should be entered in favor of the defendant.

The defendant has requested its costs of this action and a reasonable attorney's fee. 42 U.S.C. § 2000e–5(k) allows the Court, in its discretion, to award attorney's fees to the prevailing party. A prevailing defendant in a Title VII case is to be awarded attorney's fees only when the Court finds that the plaintiff's action was frivolous, un-

reasonable, or without foundation. *EEOC v. Fruehauf Corp.*, 609 F.2d at 436. The plaintiff's case was neither frivolous nor without foundation and it was vigorously and capably prosecuted. The Title VII claims did prove noticeably weak but not unreasonable, and the weakness may have been exaggerated by the well-prepared defense. For these reasons, the Court determines that each party shall pay its own attorney's fees.

The Court is also convinced that this case merits exemption from the normal assessment of costs in favor of the prevailing party. The award of costs is subject to the discretion of the Court where reasons exist for denial. *True Temper Corp. v. CF&I Steel Corp.*, 601 F.2d 495, 509 (10th Cir. 1979). The mere fact that a party has litigated in good faith is not sufficient reason to absolve a party from imposition of costs, *Popeil Bros., Inc. v. Shick Electric, Inc.*, 516 F.2d 772, 776 (7th Cir. 1975), however, several courts have declined to award costs when good faith is present and the prevailing defendant has significantly larger financial resources than an individual plaintiff. *See, e. g., Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F.Supp. 666, 679–80 (N.D.Cal.1980); *County of Suffolk v. Secretary of the Interior*, 76 F.R.D. 469 (E.D.N.Y.1977); *Maldonado v. Parasole*, 66 F.R.D. 388, 390 (S.D.N.Y.1975). The plaintiff in this case is not indigent and the defendant is not a major corporate entity, but the Court views the disparity in economic status to be sufficient to warrant the denial of costs to the defendant in view of all other circumstances. The award of costs in this type of case would constitute an undue burden and might tend to chill individual litigants of modest means who would desire to seek redress for a perceived violation of individual rights under the civil rights laws. *Schaulis v. CTB/McGraw-Hill, supra.* For these reasons, the Court determines that each party shall pay its own costs of this action.