**Carl JACKSON, Plaintiff,**

v.

**CITY OF ALBUQUERQUE, Orlando Sedillo, and Kiki Saavedra, Defendants.**

**No. 86–1252–M Civil.**

United States District Court, D. New Mexico.

Aug. 28, 1987.

Hartman & Ruskin, Carl J. Hartmann, III, Cedar Crest, N.M., for plaintiff.

City Atty. Paula Forney–Thompson, John W. Pope, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on motions of the plaintiff for attorney fees and for reinstatement and on motions of the defendants for judgments notwithstanding the verdict (n.o.v.), a new trial and remittitur. Having considered the motions and memoranda presented by the parties, I find that plaintiff's motions are well taken in part and will be granted in part and defendants' motions are not well taken and they will be denied.

### Judgment n.o.v., New Trial and Remittitur

Defendants move for judgment n.o.v. or a new trial or remittitur pursuant to Fed.R. Civ.P. 50(b), 59(a) and 59(e). There are different standards for granting or denying motions for judgment n.o.v. and motions for a new trial address different matters.

> The motion for judgment [n.o.v.] cannot be granted unless, as a matter of law, the opponent of the movant failed to make a case and, therefore, a verdict in movant's favor should have been directed. The motion for a new trial may invoke the discretion of the court insofar as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

*Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). There is little discretion allowed a court in considering a motion for judgment n.o.v. "The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's Federal Practice,* ¶ 50.07[2] (1986). Further, the evidence is to be viewed in the light most favorable to the party opposing

the motion for judgment n.o.v. *Sandoval v. U.S. Smelting, Refining & Mining Co.*, 544 F.2d 463, 463 (10th Cir.1976). "Only when the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position against whom the motion is made is j.n.o.v. appropriate." *EEOC v. University of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986) citing *EEOC v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166, 1171 (10th Cir.) *cert. denied* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). There was substantial evidence in this case to support the jury's verdict and I will not disturb it.

Neither would an award of a new trial or remittitur be appropriate in this case. I shall address the issue of remittitur first. As plaintiff's counsel aptly pointed out, the uncontradicted evidence at trial was that plaintiff Carl Jackson earned $28,000.00 plus fringe benefits at the time he was discharged. The uncontradicted evidence was that the fringe benefits brought his income up to close to $50,000.00. Thus a strict mathematical calculation of plaintiff's economic injury would yield a damage figure slightly higher than the jury's verdict. Defendants cite *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) for reasons which are unclear to me. The jury was not instructed that it was to award damages for the abstract value of a constitutional right. It was instructed on the proper elements of damage for the case, no objection was made to the instructions, and its verdict is amply supported by the evidence. Nor was a doubling the actual damages by means of punitive damages grossly excessive or apparently the result of passion, prejudice or improper sympathy as would be prohibited by *White v. Conoco*, 710 F.2d 1442 (10th Cir.1983). The motion for remittitur is denied.

Defendants also move for a new trial on the same grounds that they move for judgment n.o.v. Defts.' Brief at 7. A new trial is appropriate where the jury verdict is against the weight of the evidence, the damages are excessive or the trial was not fair to the moving party. *Montgomery Ward & Co., supra* at 251, 61 S.Ct. at 194. The standard required for a new trial is lesser than that for judgment n.o.v. the judge must find that the jury verdict was against the weight of the evidence. *Brown v. McGraw–Edison Co.*, 736 F.2d 609 (10th Cir.1984). However, this does not mean that a judge can substitute his judgment for that of the jury. It must be clear that an erroneous result was reached, *Frank v. Bloom*, 634 F.2d 1245, 1254 (10th Cir.1980), and that the verdict was clearly or overwhelmingly against the weight of the evidence. *Prebble v. Brodrick*, 535 F.2d 605, 617 (10th Cir.1976). It would be an invasion of the province of the jury to grant a new trial merely because there was a sharp conflict in evidence. 6A *Moore's Federal Practice* ¶ 59.80[5] (1986). Such is exactly the case here. The evidence was sharply conflicting regarding all the issues defendants address in their motion. It was not clearly or overwhelmingly in favor of either plaintiff or defendants and I will not disturb the jury's verdict. The motion for a new trial is denied.

### Attorney Fees

42 U.S.C. § 1988 is not a spreading fruit tree under which anyone who has represented the prevailing party at any time may seek shelter and sustenance. The affidavit from Ann Yalman indicates that her representation of Carl Jackson was on issues related to, but not prerequisite to, nor in preparation for, this trial. This is likewise apparently the case for Houston Ross since his representation of Carl Jackson predated Ms. Yalman's. The fact that their work was helpful to Mr. Hartmann is insufficient. Their representation of Carl Jackson is not representation in an action to enforce § 1983. *Webb v. Dyer County Bd. of Ed.*, 471 U.S. 234, 241, 105 S.Ct. 1923, 1927, 85 L.Ed.2d 233 (1985). I will not order defendants to pay the fees of these attorneys.

Regarding the remaining attorneys, Carl Hartmann, Paul Ruskin and Judd Conway, I have considered the factors set out

in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983). Considering their backgrounds, skill levels, training, experience, the customary rates charged by attorneys for these cases, the degree of success achieved and the complexity of the case, I find that $125 per hour for Carl Hartmann and $90 per hour for Paul Ruskin and Judd Conway are reasonable hourly rates. Since the above-mentioned factors are all taken into account in establishing the rate, no enhancement to this rate will be made. *Pennsylvania v. Delaware Citizens Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), rev'd in part 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).[1] Having established a reasonable hourly rate for each of the attorneys, the next step is to multiply that rate by the reasonable number of hours spent by each attorney *Hensley, supra; Ramos, supra.* I have taken defendants' objections to the number of hours into account and have made certain reductions. Mr. Hartmann will be compensated for 327.5 hours for a total of $40,937.50; Mr. Conway will be compensated for 34.6 hours for a total of $3,114.00; and Mr. Ruskin will be compensated for 14 hours for a total of $1,260.00. The total attorney fees awarded against the City are thus $45,311.50.

### Costs

I do not address the parties' motions regarding taxation of costs, as that is customarily handled by and has already been handled by the Clerk of Court.

### Equitable Relief—Reinstatement

Plaintiff has requested to be reinstated to his prior position or to an equivalent position or in the alternative to receive front pay until such time as he can be reinstated. Defendants counter plaintiff's motion with an offer of front pay of six months. Reinstatement is an element of the remedy for violation of a plaintiff's civil rights. *EEOC v. Prudential, supra* at

1166; *Banks v. Burkich,* 788 F.2d 1161, 1164 (6th Cir.1986); *Abbott v. Thetford,* 529 F.2d 695, 701 (5th Cir.1976). While reinstatement is the preferred remedy, it is not an absolute right. *Banks, supra* at 1164. "Reinstatement may not b appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *EEOC v. Prudential, supra* at 1172.

Front pay is an alternative remedy where there is no job available or where there is a hostile relationship. *Cassino v. Reichhold,* 817 F.2d 1338, 1346 (9th Cir.1987); *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984). I would also note that this decision is a discretionary one: "the trial court has a broad discretion in fashioning relief to achieve the broad purpose of eliminating the efforts [sic] of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination." *Fitzgerald v. Sirloin Stockade,* 624 F.2d 945, 957 (10th Cir.1980) citing *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

Cases where front pay as opposed to reinstatement has been ordered often include allegations of retaliatory discharge such as the *Fitzgerald* case. In *EEO v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd* 559 F.2d 1203 (2d Cir.) *cert. denied* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977), the allegation was likewise one of retaliatory discharge. The court noted that the litigation was marked by more than the usual hostility involved in litigation. The purpose of the remedies to make the plaintiff whole, but in that case there was a close working relationship required and without complete trust and understanding between plaintiff and her supervisor "to order reinstatement on the facts of this case would merely be to sow the seeds of future litigation." *Kallir* 420 F.Supp. at 927.

I find the *Kallir* case persuasive here. This case was also marked by far more

---

1. Pursuant to the Supreme Court's reversal on the issue of risk of loss, 107 S.Ct. at 3087–88, I have not taken risk of loss into consideration in ariving at the hourly rates.

than the usual amount of hostility between parties. The *Prudential* case, *supra*, requires the trial court to explain its reasons for refusing reinstatement if it does not intend to order reinstatement. I recognize that a refusal to reinstate is not to be lightly made and that special circumstances must exist in order to refuse reinstatement, but I believe these special circumstances exist in this case. The hostility was evident in the courtroom, in the unprofessional and derogatory language used by defendants' expert toward the plaintiff and the burglary of plaintiff's file from his attorney's office, as referred to in Mr. Hartmann's affidavit of July 24, 1987. (While I do not suggest by this that defendants themselves are responsible for this burglary, there is obviously great hostility towards the plaintiff on the part of someone who aligned himself, herself or themselves with the defendants which likely would effect plaintiff's ability to work were he reinstated.) It is also evident in the comments made by defendants in the newspapers after the trial and recently in their threatened prosecution of parties unknown in relationship to settlement negotiations. All these factors point to hostility far too high to make reinstatement a feasible remedy in this case. Plaintiff's point that most of the defendants and witnesses no longer work in the Parks and Recreation Department is well taken. However, it is not just with his subordinates that Mr. Jackson would have to associate, but with other agencies and with the public as well. The general hostility remains impossibly high. Accordingly, I will order an award of front pay.

The only remaining question, therefore, is the amount of front pay. Front pay is to be calculated in the same manner as back pay. Schlei & Grossman, *Employment Discrimination Law*, Chapter 38 III C (2d Ed. 1983–84 Cum.Supp.), Chapter 38 V A (2d Ed.1976). This includes fringe benefits such as bonuses, profit sharing, cost of living increases, insurance, overtime, sick pay and business vacations. *Id.* Plaintiff's uncontradicted testimony was that these amounted to roughly $50,000.00 per year.

While many courts have awarded six months of front pay, *e.g., EEOC v. Pacific Press Publishing Ass'n*, 482 F.Supp. 1291 (N.D.Cal.1979) Aff'd 676 F.2d 1272 (9th Cir. 1982), other courts have awarded substantially more. *See e.g. Fitzgerald v. Sirloin*, *supra* (five years); and *Sterzing v. Ft. Bend Independent Sch. Dist., Ft. Bend, Texas*, 496 F.2d 92 (5th Cir.1974) (unspecified number of "several" years). As plaintiff points out in his motion for reinstatement, his line of work is fairly specialized. Additionally, defendants' conduct has made it very difficult for plaintiff to find employment in this region with the few alternative employers that may exist. His testimony at trial that he was attempting to find positions with various colleges and universities, could additionally delay his job search since many of those potential employers work on an academic year and may not have employment available at any given moment. Based on the foregoing, I award plaintiff two years front pay at the rate of $50,000.00 per year in lieu of reinstatement.

IT IS SO ORDERED.