Willie HIGGINS, Plaintiff-Appellee,

v.

STATE OF OKLAHOMA ex rel. OKLA-HOMA EMPLOYMENT SECURITY COMMISSION, Defendant-Appellant.

No. 79–1264.

United States Court of Appeals, Tenth Circuit.

Argued July 7, 1980.

Decided March 2, 1981.

---

Christine Taylor and Michael Conaway, Attys., Oklahoma Employment Security Commission, Oklahoma City, Okl. (Victor Law Ellis, Gen. Counsel, Oklahoma Employment Security Commission, Tulsa, Okl.; and John Paul Johnson, Asst. Atty. Gen., State of Oklahoma, Oklahoma City, Okl., on brief), for defendant-appellant.

Tom M. Cummings of Grove & Grove, Oklahoma City, Okl. (Robert G. Grove, Oklahoma City, Okl., with him on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and McKAY, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Willie Higgins, a black, was employed by the Oklahoma Employment Security Commission in 1967. He resigned in October 1976, claiming the Commission had failed to promote him because of his race. After exhausting his administrative remedies, he brought this action alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district court entered judgment in his favor. The Commission appeals, contending there is insufficient evidence to support the finding of discrimination. Alternatively, the Commission argues that the trial court erred in its award of back pay and attorneys fees. We disagree and affirm the judgment below.

Higgins graduated from college in 1963 with a degree in economics. Upon graduation, he received a commission as a second lieutenant in the United States Army, after participation in a ROTC program in college. He was honorably discharged in 1967 as a first lieutenant. He was hired by the Commission in 1967 on a temporary basis and subsequently made Permanent Interviewer in the Lawton office at the end of his probationary period. Under a federally sponsored program, he obtained a master's degree in guidance and counseling in 1972, during his employment with Commission.

Upon receipt of his master's degree, Higgins assumed the duties of a Counselor III, which had been performed by Teresa Rockford. Although a Counselor III was a grade 25 position, Higgins nevertheless retained the title of Interviewer, a grade 22 position,[1] for the entire nine years he remained with the Commission. Each year Higgins received an Annual Efficiency Rating from the Lawton office. The lowest rating he ever received was a "B", and for the years 1974 and 1975 he was rated "outstanding."

 It is undisputed that in June 1973, plaintiff was recommended for promotion from Interviewer, grade 22, to Senior Interviewer, grade 24, and that the recommendation was approved by the Oklahoma Merit Board. It is also undisputed that Higgins was recommended for promotion from Interviewer to Counselor II, grade 24, in 1974 and again in 1975, but was never promoted. The dispute centers upon the reasons for plaintiff's nonpromotion.[2]

---

1. When Higgins became an Interviewer in 1967, the grade for that position was 19. Over the years, the grade level was gradually raised to 22. Each Interviewer's grade was automatically increased accordingly..

2. The Commission contends the district court did not have jurisdiction of this action because there were no available promotions for Higgins within 180 days of the time he filed his discrimination charge with the Equal Employment Opportunity Commission. This argument is without merit. In *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 348 (10th Cir. 1975), we held

discriminatory failure to promote to be a continuing violation for purposes of Title VII filing requirements so long as the plaintiff is alleging such nonpromotion over a period of time. *Accord, Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 759–61 (9th Cir. 1980); *Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (5th Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978); *Cedeck v. Hamilton Federal Savings & Loan Association,* 551 F.2d 1136, 1137 (8th Cir. 1977); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Under the analysis of a claim of employment discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1977), Higgins was required to establish a prima facie case of employment discrimination. He did this by showing that (1) he belongs to a racial minority; (2) he was qualified for promotion; (3) despite his qualifications, he was not promoted; and (4) there were promotional opportunities available that were filed by nonblacks. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 345–47 (10th Cir. 1975). Even the Commission's witnesses did not dispute that Higgins was qualified for promotion to a Senior Interviewer or Counselor II position.

Once a prima facie case has been established, the burden shifts to the employer to show that the employment decision was based on a legitimate consideration and not an illegitimate one such as race. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978); *Furnco*, 438 U.S. at 577–78, 98 S.Ct. at 2949–50. The employer need only "articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Furnco*, 438 U.S. at 578, 98 S.Ct. at 2950. The Commission asserted that Higgins' promotion in 1973 was denied because of "on the job" misconduct. Higgins' immediate supervisor, Mr. Rainey, testified that in June 1973 Higgins had signed out of the Lawton office to a stated destination on three or four occasions but went elsewhere. Rainey testified further

that as a consequence, he informed the Oklahoma City office of the alleged misconduct and Higgins' 1973 promotion was stopped. Rainey said he told Higgins of the revocation of his promotion and restricted his travel.

When a sufficient reason is presented by the employer for the employment activity alleged to be discriminatory, the burden shifts to the employee to prove that the legitimate justification offered was merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. It is apparent from the trial judge's findings[3] and his statements in the record that he viewed the reason offered by the Commission for its failure to promote Higgins as merely a pretext for discrimination. In an exchange with counsel for the Commission, the court stated:

"THE COURT: I don't remember when it was, but at any rate, Mr. Ellis, when you go out and just see a man's car parked in front of a house, then conclude that there is evil things going on, with the man's right to have a promotion, right to be treated as a fair employee, and stop his promotion, I just can't square any part of it. It's just beyond my concept that anyone would treat anyone like this. It has to be they treated him this way because he is black.

"MR. ELLIS: What is the evidence of the discrimination?

"THE COURT: What?

"MR. ELLIS: Where was the evidence that they discriminated against blacks?

"THE COURT: You just have to put two and two and all the circumstances together and come to it. That's all there is to it."

---

3. The Commission objects because the district court did not articulate its findings of fact and conclusions of law in the *McDonnell Douglas* format.

"This court has held that where the conduct of the trial substantially follows the guidelines in *McDonnell Douglas*, 'the fact that the trial judge's findings and conclusions are not couched in the precise language of *McDonnell Douglas* [and] *Furnco* ... does not necessitate a reversal.' *James v. News-*

*paper Agency Corp.*, 591 F.2d 579, 583 (10th Cir. 1979)."
*Lujan v. New Mexico Health & Social Services Department*, 624 F.2d 968, 970 (10th Cir. 1980). Although the findings in this case could have been more specific, the comments of the court at the end of the trial are sufficient to apprise us of the basis of the court's conclusions. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2577, at 697 (1971).

". . . .

"THE COURT: Yes, I think they were prejudiced to the bottom of their heart.

"MR. ELLIS: How could they have come forward then with these subsequent letters of recommendation? They tried to get him promoted.

"THE COURT: Oh, it's a coverup. They want to make a record that they won't look bad, so they write a letter. They didn't mean a bit of it, not a bit. They had no idea that they were going to help him at all.

"MR. ELLIS: Does the Court base that on some documentation, some evidence?

"THE COURT: Their attitude, their demeanor, my experience both as a lawyer and twenty years on the bench. I don't think either one of them was sincere about what they were doing. I think they did what they did here wilfully, deliberately, intentionally, because this man is black. I can't help but believe that."

Rec., vol. XVII, at 323–25.

We must uphold the trial court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a). Findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Reyes v. Hoffman*, 580 F.2d 393 (10th Cir. 1978). As an appellate court, it is not for us to determine whether the trial court reached the correct decision, but whether it reached a permissible one in light of the evidence. "When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses." *Dowell v. United States*, 553 F.2d 1233, 1235 (10th Cir. 1977).

The trial judge's finding of pretext was primarily based on his view of the demeanor and credibility of the witnesses. We should not disturb this conclusion on appeal, particularly where it is supported by other evidence. Significantly, no record was ever made of the "incident" that the Commission alleges was the basis of the nonpromotion. This is so despite testimony from the Commission's deputy director and director of field operations that some write-up of the incident should have been in Higgins' personnel file if it was serious enough to impede his promotion. In fact, the deputy director said he had never heard about the Higgins "incident" and, on cross-examination by the Commission, testified as follows:

"Q Mr. Henry, there would have been no reason for you to have heard anything about Willie Higgins, would there; he was not in your jurisdiction?

"A *If it would have happened in 1972 or '73, up until October '73, I would say I would most certainly have known about it.*

". . . .

"Q The fact that it wasn't in his personnel file could have meant that they weren't trying to put a bar there for his future promotion, couldn't it?

"A I don't know, because I never heard of the charges.

"Q So the fact that it wasn't in there didn't pose a bar to his future promotion?

"A Well, I don't know because it was never brought to my attention, and I would have to assume that if it was not in the file and it had happened, that somebody settled it and it was no bar to whatever."

Rec., vol. XVII, at 153–54 (emphasis added). The trial court's determination of pretext was influenced by the way the Commission handled the job misconduct alleged to be the basis for Higgins' nonpromotion. The court states in finding No. 9:

"Significantly, formal misconduct charges were never brought against plaintiff, a reviewable administrative record on the

matter was never created, and plaintiff was afforded no vestiges of due process by way of opportunity to effectively rebut the allegations."

Rec., vol. I, at 88.

With respect to the June 1973 "incident," Higgins denied he was away from the office other than on official business, and there is evidence in the record that the person he was visiting was a client of the Commission for whom Higgins had gotten a job.

Other evidence also supports the trial court's finding of discrimination. Rainey testified he did not consider the "incident" a bar to future promotion. However, James Page, who had to approve promotion recommendations before they were sent to the State Personnel Board, stated to the EEOC that he did not concur in future recommendations for Higgins' promotion because his past conduct indicated he was not the right individual. These conflicting assertions are coupled with the fact that during the nine years Higgins worked for the Commission, a number of promotions were given to nonblacks whose Annual Efficiency Ratings were no better that Higgins' and who had less seniority, education, or experience. There was testimony that Higgins was not considered for some of those positions because they involved transfers to other areas of the state, but Higgins testified management never asked him whether he wanted to be restricted to Lawton. The Commission contends Higgins indicated on a 1967 form that he wanted to work only in Lawton. However, the record reflects Higgins also indicated on subsequent forms that he would work elsewhere in the state.

In addition, the evidence shows that no formal reprimand was filed against Higgins during his entire employment until he tendered his resignation, claiming discrimination. On that day, Rainey placed in Higgins' personnel file a complaint about Higgins reading a textbook while he was monitoring a test.

We hold there is sufficient evidence to support the district court's conclusion that the reason offered by the Commission for its failure to promote Higgins was a pretext for racial discrimination. *See Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598, 602 (7th Cir. 1979).

■ The Commission questions the award of damages. Higgins was paid $2,809 for accumulated leave time upon his termination. The Commission argues this amount should have been deducted from Higgins' back pay award. We recently rejected this contention in *E.E.O.C. v. Sandia Corp.*, 639 F.2d 600, 626 (10th Cir. 1980). The same reasoning applies to the money he withdrew on termination from the pension plan. We have also upheld an award interest on Title VII judgments. *See United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 940 (10th Cir. 1979).

On appeal, we are reluctant to interfere with the broad authority a trial court has in fashioning an appropriate remedy to achieve the purposes of Title VII. *See Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir. 1980). Under the circumstances of this case, we cannot say the trial court abused its discretion in computing the amount of back pay.

■ The Commission also asserts that the award of attorneys fees is excessive. Such an award is particularly within the discretion of the trial court, which has seen the attorneys' work first hand. *See Comacho v. Colorado Electronic Technical College, Inc.*, 590 F.2d 887 (10th Cir. 1979). We have reviewed the record and find no abuse of discretion.

Affirmed.