Henry ACOSTA, Plaintiff,

v.

The UNIVERSITY OF the DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 80–1267.

United States District Court,
District of Columbia.

Nov. 19, 1981.

As Amended Dec. 1, 1981.

Mayda C. Tsaknis, Emma N. Rytting, Washington, D. C., for plaintiff.

Melvin W. Bolden, Jr., Corp. Counsel, Washington, D. C., for defendants.

---

## MEMORANDUM OPINION

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JUNE L. GREEN, District Judge.

Plaintiff Henry Acosta, a male Hispanic, brought this action under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*), the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Civil Rights Act of 1871 (42 U.S.C. § 1983), and the Due Process Clause of the Fifth Amendment.

Acosta was employed as an associate professor of the Department of Criminal Justice by the Washington Technical Institute (WTI) in 1974. WTI merged with two other schools and became the University of the District of Columbia (UDC) in 1977–78. Acosta continued as associate professor in its Department of Criminal Justice of the School of Business and Public Administration. In 1978 Acosta applied for promotion to full professor. His application was denied. Plaintiff alleges that he was completely qualified for the position of full professor and that this denial was due solely to discrimination based on his race and national origin. He further alleges that since 1978 when he filed his Equal Employment Opportunity Commission (EEOC) complaint, UDC has taken retaliatory measures against him in that his grant applications have been denied, and he has not been awarded any step increases at his grade level. Plaintiff has exhausted his administrative remedies and seeks a declaratory judgment, promotion to full professor, back pay, implementation of an affirmative action plan, compensatory damages, punitive damages, and attorneys' fees and costs.

A trial *de novo* was held in this case from October 9, 1981 through October 16, 1981. The Court heard testimony from twenty-two witnesses, including all of the major actors involved in the denial of plaintiff's request for promotion. The Court had full opportunity to observe each witness' testimony and demeanor and has made careful judgments on each one's credibility. There were some witnesses who were obviously biased and the Court has weighed this fact in evaluating their testimony. Based on its consideration of the testimony presented, the exhibits introduced into evidence, the memoranda filed by the parties and the entire record in this case, for the reasons stated below, the Court has concluded that UDC discriminated against Acosta based on his race and national origin in failing to promote him to full professor.

I.

A. Plaintiff's Background and Qualifications:

Plaintiff obtained a B.A. in Spanish, Spanish History and Literature at St. John's College in Brooklyn, New York in 1951. He also obtained an MPA in Public Administration and Police Science from the John Jay College of Criminal Justice, the City University of New York in 1971.

From 1951 to 1971, plaintiff was a member of the New York Police Department, advancing through the ranks of Patrolman, Detective, Sergeant and Lieutenant. He was assigned as an Instructor for twelve years at the New York City Police Academy intermittently from December 1953 to 1971. He was involved in various other teaching duties as well while at the New York City Police Department, such as lecturing on Police Science at the City University of New York and teaching human relations, law enforcement and Spanish to police recruits and cadets. He holds a vocational/technical certificate of competency as Instructor in Police Practices from the Board of Education of the City of New York.

In 1960, when plaintiff was a patrolman, he won the top career civil service award, heading a list of five other winners. The

awards were sponsored by the Hundred-Year Association in cooperation with the NYC Police Department. Plaintiff received another commendation from the Third Grand Jury of the County of New York in 1962 for his assistance in actions leading to the indictment of an attorney in his attempt to bribe an officer and a witness.

Plaintiff is bilingual in Spanish and English. He speaks English with no foreign accent. He belongs to several professional associations and has published six articles.[1] In addition, he has numerous research papers to his credit which he has written during the last decade. These papers largely concern evaluations of and recommendations on the academic program and personnel policies at UDC. Plaintiff also produced and directed two films for the Library of Alexandria, Virginia in 1973 on the police handling of the alcoholic and the law enforcement program at Northern Virginia Community College.

From 1971 to May of 1973, plaintiff was an assistant professor of the Northern Virginia Community College. In 1973 he was the program head of the College's Law Enforcement program. During the latter part of 1973 plaintiff taught at the National Center for Alcohol Education in Rosslyn, Virginia as a faculty associate. Plaintiff was rated at a GS–13 level by the U. S. Civil Service Commission when he applied for a position as Course Developer/Instructor at the U. S. Treasury Training School in 1975.

B. Plaintiff's Employment at UDC:

Plaintiff has taught at UDC and its predecessor institution, WTI, as an associate professor in the Department of Criminal Justice since he was hired in 1974. From January of 1974 to September 1978 he did not miss one day's work or teaching assignment due to his being absent on sick leave. In addition to his paid teaching, he has been active in the administration of UDC. He has served on various committees, including the Academic Affairs Committee, the Curriculum Function Committee and others, and has acted as advisor to the dean of the Criminal Justice Division on numerous occasions. The Dean of the Faculty commended Acosta for the assistance which he provided the Latino program in 1976.

Plaintiff has volunteered his time also to UDC. He taught two sessions without pay at the Van Ness Campus (VNC) Continuing Education Officer program in 1976. The Continuing Education department acknowledged his outstanding voluntary service and characterized his efforts as "time consuming and beyond his normal teaching responsibilities." In 1981, plaintiff was selected to be an EEO Counselor-at-large, a position which he has performed in addition to his regular duties.

Because of his interest and background in management, plaintiff applied in 1979 for the position of Associate Vice President for Planning in the Executive Vice President's Office. A black female was awarded the job. Despite UDC's awareness of plaintiff's interest in a management job, he was not advised of a subsequent opening, that of Associate Vice President for Academic Personnel Management. The job was awarded to a black male with less managerial experience than plaintiff. In fact the only two Hispanics in administrative positions are Messrs. Casciero and Neira. Mr. Casciero makes less salary than some of his subordinates and Mr. Neira's salary is lower than

1. The articles are:

 (a) "Hiring of Gay Police Officers Would not Strike a Happy Medium." John Jay College of Criminal Justice, City University of New York, *Law Enforcement News*, March 26, 1979;

 (b) "Body Armor Cost Comparison v. Fatality Injury Reduction Cost." *Police Chief*, Gaithersburg, Maryland, October 1978;

 (c) "Modifying Morality Measures: The Uniform Crime Reports." *Security Management*, Washington, D. C., September 1978;

 (d) "Coping with Civil Disorder." *Security Management*, Washington, D. C., November 1973, co-author Hugo Massini;

 (e) "How a Policy Bank Operates." *The New York Times*, June 28, 1964;

 (f) "The Spanish-English Phonetic Booklet for Police Officers." New York City Police Department, May 1958.

other non-Hispanics doing comparable work.

Acosta also has encountered difficulties in procuring grants from the University. He applied for three grants and each application was denied. In 1980, he applied for a grant to research and write a criminal justice text for which he was eminently qualified. The application for the grant required the signature of the Dean of the College solely to attest that the research project would not interfere with the professional duties of the applicant. Dean Butler, a black male, in addition to signing plaintiff's proposal, criticized it. Plaintiff's application was the only one which had a negative comment on it by the Dean. (Exactly what was stated is unknown since the University has "lost" the document.) As stated above, plaintiff did not receive the grant.

C. Plaintiff's Performance as an Associate Professor:

Acosta has received superb annual evaluations throughout his tenure at WTI and UDC and has been recommended for reappointment each year. In 1974, plaintiff's department chairperson Dr. Stewart commented on the superlative work done by plaintiff. The 1975 evaluation was signed by the next department chairperson, Mr. Nickens. It classified plaintiff's work as excellent and commended him for his involvement in extra academic activities, such as committee work and academic writing. Plaintiff's 1976 evaluation characterized him as versatile, thorough and professional and again commended his extracurricular activities and his efforts at professional self-improvement. Dean Anderson and WTI president Dr. Dennard endorsed each of these three recommendations and evaluations.

In the winter of 1977, plaintiff was reviewed as above average. The fall of 1977 evaluation described plaintiff as highly conscientious and capable in the performance of his professional duties. In 1978, plaintiff was given a composite rating of 97.4% out of 100% and an overall rating of excellent.

The 97.4% score represented a rating on five criteria: peer evaluation, student assessment, teaching relating activities, professional achievements and service University/college/community. The chairperson of the evaluation committee, Kelsey Jones, signed the evaluation and the department chairperson concurred. Dean Butler, however, refused to concur because of "insufficient quantity and quality of documentation in professional achievement and university service." Jones also recommended plaintiff for promotion to full professor, which position plaintiff did not receive.

Plaintiff's 1979 evaluation originally marked him excellent and gave him a total of 94.55%. The chairperson of the evaluation committee, a black female, lowered his overall rating to good.

Students evaluated Acosta's teaching as the best or among the best. On a 100-point scale, his students awarded him an average of 98 points during one school year.

D. Plaintiff's Denial of Promotion to Full Professor:

The requirements for promotion to full professor in 1978 when plaintiff submitted his application were as follows: (1) an earned doctorate in major field or an allied area and five years full-time college teaching in major field or in allied area, or (2) a masters degree in major field or an allied area, plus the completion of eight years full-time college teaching and/or equivalent experience in the major field or an allied area. Believing that he qualified for the latter category, Acosta submitted his application for promotion to full professor.

David Chatman, a black male, was Dean of the School of Business and Public Administration in 1978. On January 23, 1978, he circulated a memorandum to the faculty of his school, including the plaintiff, concerning the procedures to be followed in requesting a promotion. The memorandum indicated that any faculty member interested in being considered for promotion should write a statement of justification to include additional academic preparation since the acquisition of present rank, any publications

or intended publications, community activities and work done for the institution.

The memorandum further stated that three faculty members would be appointed to evaluate and make recommendations for promotion. It set forth the procedures this Committee would follow. Specifically, it established that the Committee would review the applications, rank them and submit them to Dean Chatman. Dean Chatman then would review the applications and take a position favorable or otherwise. A meeting between Dean Chatman and the committee to resolve any differences in opinion would follow. The list agreed upon in rank would be forwarded to the Deans Committee for review and support. The Deans Committee would consider applications from the whole University, rank them, and forward to Dr. Allen, Dean of the VNC, its final list of applicants recommended for promotion.

The Promotion Committee and Dean Chatman did not follow the procedures set forth in the January 23 memorandum. In fact, their actions were colored throughout with bias. The members of the Promotion Committee were selected by Dean Chatman, Assistant Professor Jain (East Indian), and Instructor Ross (black). They chose William Council (chairperson of the Committee and black), Dorothy Whitaker (black) and Theodore Carr (black). None of the Committee members was of plaintiff's school of discipline and none was a full professor nor even an associate professor. Furthermore, during that January of 1978 when plaintiff was the chairperson of the Curriculum Committee, he had reprimanded Carr for failing to submit the course outlines from his department to the Committee. This group was not well suited to evaluate plaintiff's application.

The Promotion Committee devised its own method for rating the applicants. They graded each applicant on about six different categories, such as academic credentials, publications, community service and teaching experience. There was conflicting testimony as to exactly what the categories were. It was possible to receive 100 points in each category. Each of the three committee members graded each applicant in the six categories. The number of points which an applicant received from all three Committee members was then totaled and divided by three. The Committee then ranked the applicants. The candidate with the highest number of points received the top recommendation for promotion, the next highest the second recommendation, and so on.

The Committee made no attempt to divide the applicants into categories by the position for which they were applying. Rather applicants for full professor, associate professor and assistant professor competed against each other for promotion. The candidates were supposed to be graded differently based on the position for which they were applying. For example, in the teaching experience category two years of experience would be worth more points to a candidate for assistant professor than to a candidate for full professor. However, the Committee established no standards for awarding the points to the different categories. The appraisals apparently were the subjective judgments of each Committee member.

The testimony of the three Committee members reflected this subjectivity. They differed from one another as to the manner of making their selections. No one could remember how many points plaintiff received in the different categories, and the Committee's working papers have been lost. Dean Chatman testified that all the Committee's backup material had been destroyed in a fire. Whitacre and Carr testified that plaintiff received no points for his masters degree in the academic achievement category, and further stated that plaintiff received no points for his years of teaching experience. The Court does not understand why plaintiff should receive no points in these categories. The requirements for promotion to full professor in 1978 were that one needed a doctorate or a masters and eight years teaching experience. Plaintiff should have been awarded partial points for his masters. Further, his

twelve years teaching experience at the Police Academy, two years at Virginia Community College and four years at UDC clearly qualifies him to receive full points for teaching experience.

The Committee members also occasionally contradicted themselves. For example, Carr stated that none of the candidates received any points for publications because no one had any. Yet he also stated that Chatman and Jain, who were applicants for promotion, had received 569 and 589 points, respectively, and had gotten about 100 points in each category. The Court further notes that Acosta had submitted evidence of two publications with his application which apparently were not counted.

On February 22, 1978, the Promotion Committee sent Dean Chatman a list of the eight applicants ranked by the points they had received. The Committee further noted in the memorandum that they had the backup material for the ranked list should Dean Chatman want it. However, in their testimony the Committee members stated that they had given all the material to Chatman. Plaintiff was ranked seventh out of eight applicants and was given a total of 270 points. The next highest score was 403.[2] The top three ranking faculty members on the list submitted to Dean Chatman were Jain, Chatman and Ross. These individuals were the same ones who had chosen the Committee members.

The Deans Committee met on February 21, 1978 to rank the faculty members for promotion as evidenced by a memorandum sent to Dr. Perpener, Acting Dean of the VNC on February 23, 1978. However, while the Deans Committee met on *February 21, 1978*, the Promotions Committee of Carr, Whitaker and Council did not send Dean Chatman the above-described list of their ranking until *February 22, 1978.*

At the Dean's meeting, only the top three applicants from each school were considered. Each dean identified the top three applicants from his school in order of preference for promotion. The deans then compared these applicants against each other and ranked them again. The deans, however, *never* double checked the recommendations of the initial screening committee.

Chatman, the dean of plaintiff's school, submitted his own name and the names of Jain and Ross to the Dean's Committee. Plaintiff's application was therefore never reviewed by the Deans Committee. Although Chatman was only an Assistant Professor, he submitted his name to the Dean's Committee for consideration to full professor. The Dean's Committee changed that recommendation to one for associate professor when it became clear that he did not have the credentials to apply for a full professorship.

Plaintiff was denied promotion to full professor and was not recommended for a salary increment. Four members of the VNC faculty were promoted to full professor in 1978. None were of Hispanic origin.

## II.

The basic allocation of burdens of proof and order of presentation of proof in a Title VII case are set forth in three stages. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

2. Specifically, the scores and ranks were as follows:

| Rank | Name | Score |
|---|---|---|
| 1 | Jain, K. C. | 583 |
| 2 | Chatman, E. D. | 569 |
| 3 | Ross, Connie | 547 |
| 4 | Thompson, R. | 449 |
| 5 | White, W. B. | 442 |
| 6 | Nelson, A. | 403 |
| 7 | Acosta, H. | 290 |
| 8 | Gilden, K. | 156 |

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973) (hereinafter *Burdine* ).

■ In *McDonnell Douglas* the Supreme Court set forth the essential elements to establish a prima facie case of discrimination. *McDonnell Douglas, supra* at 802, 93 S.Ct. at 1824. In a failure to promote case, the plaintiff must show generally that he belongs to a protected class, that he was qualified for promotion, that he was not promoted, and that there were promotional opportunities available that were filled by persons not members of plaintiff's protected class. *See, e.g., Higgings v. Oklahoma*, 642 F.2d 1199, 1201 (10th Cir. 1981). The Supreme Court elaborated on this test in *Burdine* :

> The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. *See Teamsters v. United States*, 431 U.S. 324, 358 & n.44 [97 S.Ct. 1843, 1866 & n.44, 52 L.Ed.2d 396] (1977). As the Court explained in *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577 [98 S.Ct. 2943, 2949, 57 L.Ed.2d 957] (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff

because no issue of fact remains in the case.

*Burdine, supra*, at 1094 (footnotes omitted).

## A.

■ Plaintiff's first claim is that defendants' failure to promote him to full professor constituted discrimination on the basis of national origin. Plaintiff clearly has established a prima facie case on this claim. First, Acosta, a Spanish-surnamed citizen of the United States, is a member of a protected class. Second, Acosta has demonstrated that he met the criteria established by defendant for promotion to the rank of full professor in 1978. Promotion to full professor required *either* a doctorate and five years of full-time college teaching *or* a masters and eight years of full-time college teaching or the equivalent experience. Acosta had an MPA in Public Administration and Police Science from the City University of New York. He had four years full-time college teaching experience at WTI/UDC in the winter of 1978. Further, he had been an instructor for twelve years intermittently at the New York City Police Academy and had been an assistant professor at the Northern Virginia Community College for two years. This extensive teaching experience, which covers an eighteen-year period, clearly qualifies as the equivalent of eight years of full-time teaching experience. Plaintiff's performance as an Associate Professor at UDC was excellent. His annual evaluations, which were detailed above, reflect his talent and skill. In addition, plaintiff has been involved deeply in community and University activities. By 1978 he belonged to several professional organizations, had served on several academic committees, had been advisor to the dean of the Criminal Justice Division, had received a commendation for his assistance to the Latino program and had taught two sessions without pay at the VNC Continuing Education Officer program for which he was commended highly by the Continuing Education Program. Finally, plaintiff had published six articles and writ-

ten numerous research papers.[3] The Court finds that plaintiff was eminently qualified for promotion to full professor.

Third, plaintiff has shown that he applied for promotion and was rejected. Finally, he has demonstrated that persons not of his protected class were promoted. Four persons, all non-Hispanics, from the Van Ness campus of UDC were promoted in 1974. The Court finds that plaintiff has satisfied his initial burden and created an inference of discrimination. The burden therefore shifts to defendants to articulate a legitimate, nondiscriminatory reason for failing to promote plaintiff.

UDC argues that in 1978 it was trying to upgrade the qualifications of its professors and therefore required *all* candidates for promotion to full professor to have a terminal degree. UDC defined a terminal degree as the last degree which one can receive in an academic field. Typically it is a Ph.D. Each faculty member promoted to full professor from the VNC in 1974 had a Ph.D. UDC asserts that since plaintiff did not have a terminal degree, he could not have been promoted.

UDC's position is filled with contradictions and unexplained exceptions. First, in its amended findings of fact and conclusions of law, UDC states that the 1974 WTI criteria for promotion were in effect in 1978. These criteria are the ones which provide for promotion to full professor with a masters and eight years of full-time college teaching or the equivalent experience. *See* Defendants' Amended Findings of Fact and Conclusions of Law, filed October 28, 1981, pages 3–4.

Second, faculty members without terminal degrees have been promoted to full professors both before and after 1978. Theodola Milligan (black) was promoted to full professor on September 16, 1974. Before the merger of schools she had been employed by WTI. She possessed only a masters of science at her promotion. Hildred Roach (non-Hispanic) was promoted to

full professor with only a masters of music degree on April 4, 1977. Two other non-Hispanic faculty members, William Lanier and Meredith Rode, were promoted to full professor with merely masters of fine arts on August 15, 1978 and August 14, 1979, respectively. While it is possible to obtain a Ph.D. in fine arts, Dr. Sam Sullivan, Associate Vice-President for academic and personnel matters, testified that a masters of fine arts was considered a terminal degree by the art department. He could not identify, however, the individuals who had made this decision nor explain the basis for it. Dr. Sullivan also testified that a JD was considered a terminal degree, even though it is possible to obtain a masters of law and a doctorate of law. Carr testified, however, that in 1978 a JD was not considered a terminal degree. Two more non-Hispanic faculty members, Richard Clark and Michael Shapiro, were made full professors on August 15, 1978 and May 23, 1974, respectively, with JDs as their highest degree. Dr. Sullivan could not explain why a Ph.D. was required in the field of criminal justice when it was not required in other fields.

Third, there was conflicting testimony from defendants' witnesses about what information on degrees was considered during the promotion process. Dr. Perpener and others testified that only those degrees which an applicant had received *after* he had been hired were considered relevant. Other witnesses, including Carr, said that they looked to see what degrees an applicant had *regardless of when* they were received.

These inconsistencies undercut the validity of UDC's alleged legitimate, nondiscriminatory reason for non-promotion. UDC has not carried its burden. The Court finds that UDC's failure to promote plaintiff was discriminatory.

Assuming, *arguendo*, that UDC had carried its burden of production, Acosta would have to prove by a preponderance of the evidence that the reasons offered by

**3.** Two of the six articles were not published until the fall of 1978. They had been accepted for publication, however, at the time of plaintiff's application.

UDC were a pretext for discrimination. *Burdine, supra* at 1093. Acosta has carried this burden. Subjectivity and conflicts of interest pervaded the promotions process. The three members who selected the initial Promotions Committee were the individuals who were ranked one, two and three for promotion. The criteria for awarding points by the Committee was not defined. The 290 points awarded plaintiff was clearly far too low. The memorandum from the Promotions Committee to Chatman which listed its ranking was dated February 22, while the February 23 memorandum from the Deans Committee to Dr. Perpener indicated the Deans Committee met on February 21. The Promotion Committee's working papers were lost in a fire so their findings could not be checked. The "terminal degree" requirement could not be well defined. Its elusive nature shows even more subjectivity. Numerous other examples of the contradictions in UDC's arguments have been discussed above. These incidents prove that the entire promotion procedure was invalid and discriminatory. The Court finds that the terminal degree requirement was a pretext for denial of plaintiff's application for promotion.

In order to make plaintiff whole, he is promoted retroactively to full professor as of August 16, 1978 at the grade 2, step 6 level and awarded a step increase to step 7 as of the fall semester of 1980. The Court bases its decision on the fact that faculty members Bhambri, Jones, Olympia and Rode were compensated at the G.2, S.7 level when promoted to full professor in 1978. Meredith Rode was then awarded a step increase to step 7 in 1979. Virginia Moore, who was promoted to full professor in 1976 at G.2, S.6, received a step increase to step 7 in 1977 and another increase to step 8 in 1979.

In money damages plaintiff shall receive full back pay with interest compounded at 6% per annum for salaries lost for the academic years 1978 to present and for his summer appointments from 1979 to the present. In addition, plaintiff shall receive a 15% contribution to the pension fund for this back pay.

## B.

Acosta also alleges that defendants retaliated against him for filing a discrimination complaint by refusing his 1980 grant application and denying him step increases in salary. As described above in section I, Acosta applied in 1980 for a grant to write a criminal justice text. Dean Butler wrote a negative comment on the application, which comment was not ascertained because that paper was "lost." Plaintiff did not receive the grant.

■ Plaintiff has not presented a prima facie case of retaliation. While he meets the first three *McDonnell Douglas* requirements, he has not shown that other faculty members with the same or lesser qualifications were given grants. Further, Dean Butler testified that he was not aware of plaintiff's EEOC complaint when he commented on plaintiff's application. Finally, the Court notes that one does not receive grants as a matter of right. Accordingly, the Court finds no retaliation in UDC's denial of Acosta's grant application.

With respect to the denial of step increases, the Court finds the issue moot. The Court has ruled already that Acosta be promoted retroactively to full professor and be awarded all proper step increases.

## III.

■ The Court concludes, as a matter of law, that the defendants have violated the Civil Rights Act of 1866, 42 U.S.C. §᾿1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Due Process Clause of the Fifth Amendment to the United States Constitution. The elements for a cause of action under sections 1981 and 1983 are identical to those of Title VII when used as a parallel basis for relief against disparate treatment in employment. *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980). The Due Process Clause, which is applicable to the District of Columbia, *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) "contains an equal protection component prohibiting the Unit-

ed States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). In this case, the evidence demonstrated that defendants invidiously discriminated against plaintiff.

 Under §§ 1981 and 1983 compensatory and punitive damages are available. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). Plaintiff testified that he incurred $7,500 in costs. The Court, accordingly, awards him $7,500 as compensatory damages. The Court further notes that as the prevailing party he is entitled to attorney fees. Punitive damages are awarded in cases where bad faith and malice are shown. While defendants discriminated against plaintiff, the Court finds no malice in their actions and denies any punitive damages.

This case is dismissed.