**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,**

v.

**MID–SOUTH AUTOMOBILE
CLUB, Defendant.**

**No. 81–2358–W.**

United States District Court,
W.D. Tennessee, W.D.

Jan. 14, 1987.

Charles Hampton White of Cornelius & Collins, Nashville, Tenn., for defendant.

Philip B. Sklover, Associate Gen. Counsel, E.E.O.C., Charles Shanon, Gen. Coun-

sel, Washington, D.C., and Joseph Ray Terry, Regional Atty., Lawrence J. Kamenetzky, Supervisory Trial Atty. and Wendell E. Bush, Sr. Trial Atty., E.E.O.C., Memphis, Tenn., for plaintiff.

## MEMORANDUM OPINION

WELLFORD, Circuit Judge, Sitting · by Designation.

This case was heard and considered by the Court sometime ago, and has been regrettably overlooked resulting in a failure promptly to dispose of the issues between the parties in this Title VII dispute. The undersigned Judge apologizes for this oversight. The Court has carefully reviewed its notes, the file, and the pleadings in this cause and now makes the following findings and conclusions based on the proof and evidence:

Plaintiff, Equal Employment Opportunity Commission (hereinafter "EEOC"), is the federal agency authorized to bring this suit under the provisions of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* This Court has jurisdiction over this cause.

Defendant, Mid-South Automobile Club (formerly known as Dixie Motor Club) (hereinafter "Mid-South"), has been and is engaged in the business of providing route information, maps, road service, insurance, and other services for the American Automobile Association for travelers in and about Tennessee and adjoining states primarily, but also with respect to providing tour information and obtaining reservations for domestic and foreign travel. Defendant has employed fifteen or more employees in each working day of twenty or more calendar weeks in the preceding years involved. The Memphis office has not employed fifteen or more employees since January, 1973.

A timely charge was filed with the EEOC by Carolyn Vaughn, a black female employee of Mid-South on April 20, 1979, alleging that she had been unlawfully denied a promotion because of her race. Defendant was served with a copy of the charge on or about May 2, 1979.

The EEOC investigated Vaughn's charge, issued a reasonable cause determination and attempted unsuccessfully to conciliate. EEOC followed the statutory and regulatory requirements in investigation and pursuit of the charge.

Oscar L. King, Jr. became Vice President of the Memphis office of Mid-South upon its acquisition by defendant in January, 1973. At the time of acquisition, the employees of the former Dixie Motor Club were retained as employees of Mid-South.

Vaughn applied for a position as sales representative with Mid-South in 1974. She did so upon recommendation of Mazie Gentry, another black female employed by Mid-South as a sales representative. Vaughn indicated on her application both that she had graduated from high school and that she had completed two years' college at LeMoyne-Owen College in Memphis. Her application did not indicate particular secretarial skills or ability, familiarity with office machines, or other clerical qualifications. Vaughn was hired and assigned the job of sale representative. She called on the telephone prospective leads for members of Mid-South. If a prospective member indicated a desire to join Mid-South, Vaughn then prepared a membership application and took it to the new member's home for execution. Vaughn worked at Mid-South's office on Union Avenue in Memphis, along with other sales representatives, principally between 5:00 p.m. and 9:00 p.m. Her compensation was in the form of commissions; during 1977 she received $5,479.41 and in 1978, $5,397.39 from Mid-South.

In December 1975, it came to the attention of King, defendant's manager, that Vaughn and another sales representative working at the Mid-South office after 5:00 p.m., were having visitors on the premises. Due to difficulties which arose from having visitors on the premises, in December 1975, King issued a memorandum to all Mid-South employees advising them not to have visitors on the premises after regular hours, or 5:00 p.m.

In 1975, Mid-South closed its domestic travel counselor program in Jackson, Ten-

nessee. A sales representative and local manager, Ray Harris, who had been transferred from Memphis to Jackson, returned to the Memphis office. Upon his return to Memphis, Harris was interviewed by Pamela Jones, domestic travel manager, for a job as domestic travel counselor. Harris was assigned the duty of domestic travel counselor and served as such until August 1981, when he resigned. Vaughn was working as a sales representative at this time, but she did not apply for the position Harris obtained.

In December 1978, Vaughn informed King that she would like to be considered for the next available vacancy as a domestic travel counselor, having learned that there might be an impending vacancy. In February 1979, Vaughn was interviewed for the position by King, who did not then ask her to update her prior application. During the interview, King did not encourage Vaughn to expect that she would be hired in this capacity.[1]

Telephone inquiries regarding memberships which were received during the regular day office hours, prior to 5:00 p.m., were deemed considered "house accounts" for which sales commissions would not be paid. Sales representatives were instructed not to contact "house accounts" in an effort to sell memberships. Vaughn and the other sales representatives, Grimmer and Karnes, had some disputes about these accounts with worldwide travel counselors, who worked during regular hours generally. Vaughn attempted to pick up leads at the close of the regular workday by observing worldwide and domestic travel counsels' notes in another area of the office. King considered that Vaughn was attempting to obtain by this means "house accounts" on which defendant did not expect to pay commissions.

On October 1, 1978, Sara O'Ryan, a white female who had attended school in France, submitted an application for employment at Mid-South. O'Ryan indicated that she possessed clerical skills including the use of a typewriter, an adding machine, and filing ability. She was the daughter-in-law of the former head of the Dixie Motor Club who became a member of Mid-South's board of directors upon its acquisition in January 1973. On February 15, 1979, Phylis Floyd Johnson, a black female, also submitted an application for a position with Mid-South. On Johnson's application she indicated a desired salary of $800 per month, which was considerably higher than what other Mid-South travel counselors were then earning.

Diane Conry, a domestic travel counselor, informed King that she was resigning in late February or March of 1979. After Conry's resignation, King reviewed the applications on file and, after consultation with Pamela Jones, manager of domestic travel, determined to hire O'Ryan, who began work on March 16, 1979, at a salary of $500 per month. Vaughn did not learn of O'Ryan's selection until a short time after she began work in this position. Vaughn remonstrated with King reminding him that she had on more than one occasion expressed her interest in the job, including a very recent inquiry and application.

There were no particular or exceptional job qualifications for the position of domestic travel counselor. The actual job duties required that a counselor be able to read and comprehend certain reference manuals needed to make road maps, develop maps and give out information on request from source materials. They were also required to operate an adding machine. King expressed a strong desire for subjective criteria of a pleasant personality and an ability to get along well with people.

Vaughn was qualified for a position as domestic travel counselor with some necessary training. She had the necessary educational background and comparable sales experience. Vaughn spent much of her time in contact with customers and potential customers.

Mid-South took the position that it selected O'Ryan rather than Vaughn for the domestic travel counselor position because she was better qualified and similarly a

---

1. A domestic travel counselor is paid on an hourly basis and generally works regular daytime hours at least. Sales representatives were paid on a commission basis.

preferable applicant to Johnson who was seeking a higher salary. There was evidence, however, that white employees had been hired at lower salaries than they had requested.

Mid-South maintained an all white staff of employees who worked during regular hours. Between 1973 and 1981, Mid-South filled 34 vacancies in salaried positions including 17 vacancies in the travel counselor classification. All but one of these hired were white. Sandra Snyder, a black female, was hired as a domestic travel counselor in 1979 following defendant's receipt of Vaughn's charge and during the EEOC investigation.

Mid-South offered several non-discriminatory reasons for not promoting Vaughn to the domestic travel counselor position. First, it claims that O'Ryan was more qualified than Vaughn. Early in the investigation, Mid-South also pointed out that Vaughn would not be considered for the job because she was less senior than other sales persons who had expressed interest in the counselor's position. Seniority was not established, however, as a primary consideration in filling this position. Both Karnes and Grimmer, who were sales representatives, testified at trial that they had no interest in the domestic travel counselor position.

Vaughn filed a "charge of race discrimination in April of 1979 concerning the employment of O'Ryan. Approximately ten months later, O'Ryan gave notice of her impending intention to resign her position. King, the defendant's manager, took the position that O'Ryan was hired, rather than Vaughn, due to the latter's loud and abrasive personality. He also maintained that she was not trustworthy because of an alleged practice of padding mileage expense claims, and because she applied for and received unemployment benefits following termination from a prior employer while employed at least part time by defendant. This claim was ultimately disallowed. O'Ryan was replaced in 1980 by Sandra Snyder, a black female.

I conclude that plaintiff Vaughn has made out a prima facie case of employment discrimination, and therefore consider the reasons set out by defendant for choosing Miss O'Ryan rather than Vaughn. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The reasons given are not persuasive, and I find that plaintiff, moreover, has shown them to be essential pretextual. *See Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Vaughn's file indicates no disciplinary actions and she was qualified, or more qualified, for the position sought than the recipient, O'Ryan. The burden shifted to defendant to show that the decision to hire O'Ryan was based on valid and genuine business considerations and not race, *Board of Trustees of Keane College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). I find a failure to "articulate some legitimate, non-discriminatory reason for the employee's [Vaughn's] rejection." *McDonnell Douglas*, 411 at 802, 93 S.Ct. at 1824. *See Higgins v. State of Oklahoma*, 642 F.2d 1199 (10th Cir. 1981). This determination is aided by the statistical evidence offered which indicates up to the critical time whites only were considered for the position of domestic travel counselor.

Accordingly, IT IS ORDERED that defendant offer employment to Vaughn as a domestic travel counselor at the next available opening at a current commensurate salary to others who begin in that position with comparable experience as Vaughn.

The court further orders that Ms. Vaughn be paid back pay plus interest in an amount to be determined by the court. The parties, in view of the delay in the entry of this order, will submit a proposed amount to be paid Ms. Vaughn within fifteen (15) days after entry of this order.

Defendant is enjoined from further violations of Title VII of the Civil Rights Act of 1964, as amended.

A final order will be entered after submission of proposed compensations on back pay plus interest.