**MERCY HOSPITAL ASSOCIATION, Appellee,**

v.

**OHIO CIVIL RIGHTS COMMISSION, Appellant.**

[Cite as *Mercy Hosp. Assn. v. Ohio Civ. Rights Comm.* (1989), 65 Ohio App.3d 613.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–671.

Decided Dec. 14, 1989.

*Emens, Hurd, Kegler & Ritter, Joseph M. Millious, Stephen E. Chappelear* and *Robert G. Schuler,* for appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Joseph D. Rubino,* for appellant.

McCORMAC, Presiding Judge.

Defendant-appellant, Ohio Civil Rights Commission ("the commission"), appeals the judgment of the Franklin County Court of Common Pleas reversing the commission's order which found that plaintiff-appellee, Mercy Hospital Association ("Mercy"), engaged in unlawful discriminatory conduct.

On October 15, 1985, Beverly Jones, a black person, filed an affidavit with the commission alleging that Mercy had failed to hire her as an operating room nurse for reasons not applied equally to all persons regardless of race. A hearing was held, after which the hearing officer recommended that the commission order Mercy to cease and desist from future unlawful discriminatory practices, offer Jones a position as an operating room nurse, and award Jones backpay. Upon review, the commission accepted the hearing officer's recommendations and issued the order. Mercy appealed to the court of common pleas, which reversed the commission on the basis that Jones had failed to establish a prima facie case of racial discrimination.

The commission appeals and asserts the following assignments of error:

"1. The common pleas court, as a reviewing court, abused its discretion by reweighing the evidence and substituting its judgment for that of the Ohio Civil Rights Commission.

"2. The common pleas court's decision should be reversed as a matter of law, because the court abused its discretion by applying the incorrect case law to the facts as found by the commission and adopted by the court.

"3. The commission established by reliable, probative and substantial evidence that Mercy Hospital Association violated Ohio Revised Code Section 4112.02(A) by failing to promote complainant to an operating room nurse and therefore the common pleas court erred in not so holding.

"4. The common pleas court erred when it denied the commission's motion to dismiss."

Jones was hired by Mercy as a staff nurse in 1979. She became a charge nurse and preceptor in 1983, thereby greatly expanding her responsibilities. Jones has taken most of the continuing education courses offered by Mercy and has kept her RN license current since receiving it in 1980. Prior to her employment at Mercy, Jones worked at St. Anthony Hospital where she served for two years in surgical supplies and for five years as a surgery technician.

In June 1985, Mercy posted a vacancy for the position of operating room nurse. As posted, the position required a current Ohio license to practice as a registered nurse and one to three years' current operating room experience. Jones submitted a letter to Betty Drake, the surgery nursing supervisor, expressing her interest in the position. After determining that Jones met the minimum qualifications, Drake interviewed Jones. Drake also considered Connie Compton, a white person, who was already on staff as a part-time registered nurse. Compton was ultimately offered the position, which she accepted. Compton did not submit an application for the position nor was she interviewed.

In early July, Jones received a letter from Drake informing her that she had not been hired. The letter went on to state that Jones' application would remain on file for a year. Jones later spoke with Drake about the position and was told that she would be considered for any future openings.

On July 16, 1985, Mercy posted another vacancy for the position of operating room staff nurse. Jones did not submit a second application because of the recent conversation with Drake. Again, Jones was not offered the position but, instead, Cheryl Ryan, a white person, was hired for the opening. Ryan, who had also applied for the June vacancy, did not submit a second application but was considered because Drake told her when she interviewed for the June opening that she would be considered for any further available positions. Jones was not considered for the July position even though she was informed by Drake that she would be considered.

The commission's first, second, and third assignments of error all address the same question and will be discussed together. The issue presented is whether the common pleas court erred by concluding that the commission has failed to establish a prima facie case of racial discrimination.

Any analysis of an employment discrimination charge must begin with *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The Supreme Court, in interpreting Title VII actions, formulated a three-stage analysis which sets forth the basic allocation of evidentiary

burdens among the parties. The plaintiff must first establish a prima facie case which gives rise to an inference of discrimination. The defendant may then rebut this inference by " * * * articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection. * * * " *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. Finally, if the defendant advances a legally sufficient reason for not awarding the position to plaintiff, then the plaintiff must prove that the defendant's asserted reason was merely a pretext for intentional discrimination. The Supreme Court of Ohio has held that federal case law interpreting Title VII actions shall be applicable when construing R.C. Chapter 4112. *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128.

It is only the burden of production which shifts; the ultimate burden of persuasion remains on the party alleging discrimination at all times. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. The primary issue involved in any discrimination suit is whether some are treated less favorably than others because of their race. *Teamsters v. United States* (1977), 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396. The *McDonnell* analysis " * * * was never intended to be rigid, mechanized, or ritualistic. * * * " *Furnco Constr. Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967. It was simply meant to provide an orderly framework in which to organize the evidence to conform to the ultimate issue, discriminatory intent. *Id.* Therefore, the *McDonnell* framework must be tailored to meet the facts of the case at hand.

The common pleas court recognized the Supreme Court's admonition against rigid conformity to the *McDonnell* framework, yet nonetheless applied the *McDonnell* test for a prima facie case almost verbatim. The common pleas court concluded that the commission had not established that Mercy continued to seek applicants with qualifications similar to Jones', the fourth prong of the *McDonnell* standard. However, the facts of this case do not mesh with an application with that element. It is undisputed that Jones was never considered for the July vacancy. Therefore, Mercy could not have continued to seek applicants with Jones' qualifications because her qualifications were not before the hiring officer. Additionally, the position was filled prior to the time when Jones was informed of her rejection. Therefore, Mercy did not continue to seek applicants after Jones' rejection.

In *Burdine, supra,* the Supreme Court provided a further gloss on the *McDonnell* prima facie determination when the court modified the standard to fit the facts before it. Therein, the court held that, to establish a prima face case, the plaintiff must:

" * * * [P]rove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. * * * " *Id.* 450 U.S. at 253, 101 S.Ct. at 1094, 67 L.Ed.2d at 215.

Other cases have likewise fashioned the standard for a prima facie case to fit the facts at hand. *Higgins v. State, ex rel. Oklahoma Employment Security Comm.* (C.A.10, 1981), 642 F.2d 1199; *Hooker v. Tufts Univ.* (D.C.Mass.1983), 581 F.Supp. 104; *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807.

The purpose in requiring plaintiff to first establish a prima facie case is to force defendant to explain its actions in a manner that is inconsistent with a discriminatory motive. This is so because, if the elements necessary to establish a prima facie case go unexplained, common sense dictates that it is more likely than not that discrimination was the motive behind defendant's actions. *McDonnell, supra.* Since the facts of this case do not precisely fit the *McDonnell* standard, the purpose behind the test was thwarted by the common pleas court's rigid application of the *McDonnell* framework.

▮ Applying the more generalized *Burdine* method to the facts of the case at bar, it is apparent that the commission has made out a prima facie case of discrimination. It is undisputed that Jones met the minimum qualifications for the position offered. Drake testified as such and Jones was interviewed for the June opening. The circumstances attendant to Jones' rejection are sufficient to raise an inference of discrimination. A black applicant was evaluated by an all-white supervisory staff. See *Lams v. General Waterworks Corp.* (C.A.8, 1985), 766 F.2d 386. A black has never served as an operating room nurse during the tenure of Drake as supervisor. The person ultimately hired was not on staff at Mercy at the time she was offered the position even though Mercy has an expressed policy of hiring within. Jones was never considered for the position because she did not submit a second application even though she was told she would be. The person hired was considered even though she also did not submit a second application. Finally, there was evidence indicating that Mercy may not have followed internal policies by posting the job in-house for five days before making a decision. In light of the nature of the prima facie standard, we conclude that the commission did meet its burden of production, thereby shifting the burden to Mercy to articulate a neutral reason for not hiring Jones.

▮ Mercy advances two reasons in support of its decision not to hire Jones in order to rebut the commission's prima facie case. First, Mercy argues that it believed Jones was not interested in the July opening because she did not reapply. However, Mercy repeatedly told Jones that she would be considered

for future openings and that her application would remain on file for one year. Furthermore, the person hired did not reapply for the second opening but was considered on the basis of her first application. In a factually similar situation, the Eleventh Circuit Court of Appeals held that, when an applicant was led to believe that an additional application was not necessary, it was erroneous for the lower court to conclude that defendant's proffered reason for not hiring plaintiff, failure to reapply, was worthy of credence. *Joshi v. Florida State Univ. Health Ctr.* (C.A.11, 1985), 763 F.2d 1227.

Mercy's second reason for not hiring Jones, that it hired a more qualified person, is also insufficient to rebut the commission's prima facie case. By Mercy's own statements, it never considered Jones for the July opening. No comparison of the applicants' relative qualifications was ever made; therefore, it is impossible to say that one was hired because she was more qualified than the other.

The common pleas court concluded that, because Mercy ultimately hired a more qualified individual, the fourth prong of the *McDonnell* test was not satisfied. Aside from our conclusion that the common pleas court's rigid adherence to *McDonnell* was misplaced, the qualification issue is more properly classified as going to Mercy's rebuttal and not to the establishment of a prima facie case by the commission. Having concluded that the reasons advanced by Mercy are unworthy of credence, the commission's finding was supported by reliable, probative, and substantial evidence as mandated by R.C. 4112.02 and the trial court erred by holding otherwise. The commission has established a prima facie case giving rise to an inference of discrimination which Mercy has failed to rebut.

Appellant's first, second, and third assignments of error are sustained.

The commission's fourth assignment of error contends that the common pleas court erred by denying the commission's motion to dismiss. The commission argues that Mercy failed to name and serve a necessary party to the action, Jones, as required by statute.

R.C. 4112.06(B) provides, in part, that:

"Such proceedings shall be initiated by the filing of a petition in court as provided in division (A) of this section and the service of a copy of the said petition upon the commission and upon all parties who appeared before the commission. * * * "

Jones was the complainant before the commission and a party to the proceeding. R.C. 4112.05(D). Jones was never served as provided by R.C. 4112.06(B). Mercy contends that Jones was not personally served but received a copy of the notice from the commission's attorney. This method of

notice is insufficient to conform to the exacting procedures provided by R.C. 4112.06(B). It was an abuse of discretion for the common pleas court to overrule the commission's motion to dismiss since the judicial review of this matter was never properly commenced.

The commission's fourth assignment of error is sustained.

Appellant's assignments of error are sustained. The judgment of the trial court is reversed and the case is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT and COX, JJ., concur.

DONALD A. COX, J., of the Gallia County Common Pleas Court, sitting by assignment.